[No. 3733–II.   Division Two.   October 9, 1980.]

LOWELL COOK, *Respondent,* v. CLALLAM COUNTY, ET AL, *Appellants.*

*Craig D. Knutson,* for appellants.

*David V. Johnson,* for respondent.

PETRICH, J.—This appeal challenges a Superior Court decision overturning the denial of a building permit by the Clallam County Board of Commissioners (Board) based on the State Environmental Policy Act of 1971, RCW 43.21C. We reverse, finding that the Board's decision was not clearly erroneous and that the Superior Court erred in conducting a trial de novo on appeal and in issuing a mandamus order directing the issuance of a building permit.

In March of 1977, Lowell Cook applied for a building permit to construct a miniwarehouse facility and a U–Haul dealership on 4.5 acres in Clallam County. The Board held a public hearing on the permit application and determined that the proposal constituted a major action significantly

affecting the environment. RCW 43.21C.030. This determination has not been challenged. A draft Environmental Impact Statement (EIS) was considered by the Board at a public hearing in August 1977, and the Board approved a final EIS in February 1978. The final EIS was 49 pages long and included responses from a variety of governmental agencies such as the State Departments of Ecology, Game, Fisheries, Highways and Transportation, the USDA Soil Conservation Service, and the local planning and health departments. A public engineer was the principal contributor to the EIS, and a separate engineering firm submitted a proposal for drainage of the site.

One week after the Board accepted the final EIS, it denied the building permit, finding that:

1. The proposal does not conform to the residential nature of the area.

2. The area is designated agricultural–residential by the Comprehensive Plan.

3. The proposal would contribute to further commercialization of the area.

4. The proposal would contribute to traffic congestion on the only major thoroughfare through the area (Highway 101).

5. The proposal would spread out commercial development and increase energy consumption unreasonably.

6. There are drainage problems associated with the proposal which have not been adequately resolved.

7. The proposal is not consistent with the residential zoning in the area.

Cook appealed to Clallam County Superior Court which conducted a trial de novo, allowing the testimony of three witnesses, two of whom had not appeared before the Board. The head of the county building department indicated that although some commercial building permits had been issued in the area of the proposal, others had been denied. A retired county planning director testified that the 1967 comprehensive plan was outdated and had not been consistently applied, and that the County had not enforced its zoning ordinance since 1974. The court found the Board's

decision was clearly erroneous, and issued a mandamus order requiring the County to issue the building permit.

We note initially that even if the Superior Court correctly determined that the Board's action was clearly erroneous, the mandamus order improperly required the County to issue the building permit. The parties agree that the Board's SEPA decision was a discretionary action. *Polygon Corp. v. Seattle,* 90 Wn.2d 59, 578 P.2d 1309 (1978). Although appropriate to compel the exercise of discretion, mandamus may not be used to compel performance of a discretionary act. *Peterson v. Department of Ecology,* 92 Wn.2d 306, 596 P.2d 285 (1979). The mandamus order should have instructed the Board to exercise its discretion in light of the trial court's findings.

Further, the Superior Court erred in conducting a new trial on appeal. The issue on appeal was whether the environmental documents prepared pursuant to SEPA identify "specific adverse environmental impacts". RCW 43.21C.060. The environmental documents, not new testimony presented on appeal, were the proper evidence to use in evaluating the Board's decision. To allow the judge on appeal to engage in additional evidence seeking would "virtually invite the trial court to assert and superimpose its own observations and judgment", *i.e.,* to substitute its judgment for that of the administrative body. *See Carlson v. Bellevue,* 73 Wn.2d 41, 47, 435 P.2d 957 (1968).

The central issue is whether the Board erroneously denied the building permit. In this determination we conduct our own review of the documents submitted to the Board. *Carlson v. Bellevue, supra.* The "clearly erroneous" test is the proper standard to review an administrative decision denying a building permit due to adverse environmental impacts disclosed in an EIS. *Polygon Corp. v. Seattle, supra.* Such a decision is "clearly erroneous" only when the reviewing court is left with the definite and firm conviction that the Board has made a mistake. *Polygon Corp. v. Seattle, supra; Ancheta v. Daly,* 77 Wn.2d 255, 461 P.2d 531 (1969). The reviewing court must consider all of

the factors in light of the policy expressed in SEPA to maintain, enhance, and restore the environment. RCW 43.21C.020. *Polygon Corp. v. Seattle, supra; Sisley v. San Juan County,* 89 Wn.2d 78, 569 P.2d 712 (1977).

When a proposal is denied due to its potential impact on the environment, RCW 43.21C.060 requires the denial be based on specific adverse environmental impacts which are both identified in the environmental documents prepared pursuant to SEPA and stated in writing by the responsible official of the acting governmental agency. We note that although the statute requires the adverse impacts to be both specific and identified, no particular quantum of data is mandated to support the finding of adverse impact. Further, a wide variety of impacts may be considered by the agency in the SEPA determination. In *Polygon Corp. v. Seattle, supra* at 69–70, the court upheld the denial of a building permit where "the most significant environmental impacts of the proposed project were aesthetic in nature." Other factors properly considered were the project's potential for creating pressure to alter surrounding land use and the cumulative impact from other similar projects.

The EIS in the instant case discloses problems similar to those discussed in *Polygon.* The project contemplated placing a commercial facility in an essentially rural residential area. The EIS summed up several of the adverse environmental impacts when it stated:

> Not only would the project change the primary rural agricultural/residential nature of the area and may contribute to "Strip development" along Highway 101, it may also encourage further nonconforming use which could likewise impact the area.

The EIS drafters felt the project might serve as a catalyst for development of a commercial center in the area. The EIS detailed the exact number of commercial establishments in the area and their distances from the site. The local planning department noted that the project was in a low density area and that most of the customers would travel a substantial distance from a high density area, the

City of Port Angeles, to use the facility. The EIS also disclosed drainage problems associated with the site and how the developer intended to mitigate those problems.

██ The trial court was concerned that the Board was using SEPA as a substitute for the local zoning ordinance. SEPA, however, overlays local ordinances and must be enforced even where a particular use is allowed by local law or policy. *Polygon Corp. v. Seattle, supra.* The question is not whether the Board properly enforced local zoning, but whether the EIS identifies specific adverse environmental impacts sufficient to support the Board's determination under state law. The instant EIS identified adverse impacts in the project's potential for creating pressure to alter the area's land use, the cumulative impact from other similar projects, and the aesthetics of placing a warehouse in a rural residential area. These are specific impacts recognized as valid under Washington law, identified in the environmental documents, and stated in writing by the Board. The Board's decision was not clearly erroneous, and the Superior Court order is reversed.

Reversed.

PEARSON, A.C.J., and PETRIE, J., concur.

Reconsideration pending July 31, 1981.