[No. 49639–1.   En Banc.   February 23, 1984.]

SAVE A NEIGHBORHOOD ENVIRONMENT, ET AL, *Appellants,* v. THE CITY OF SEATTLE, ET AL, *Respondents.*

*Frank H. Brown* and *David L. Dunaway,* pro se, *J. Richard Manning, Jeffrey L. Carey, Newbould & Harris,* and *John P. Harris,* for appellants.

*Douglas N. Jewett, City Attorney,* and *Gordon F. Crandall, Assistant,* for respondent City of Seattle.

*Patrick W. Crowley* (of *Siderius, Lonergan & Crowley*), for respondents Archdiocese of Seattle, et al.

ROSELLINI, J.—Appellants, representatives of a neighborhood organization, Save a Neighborhood Environment (SANE), bring two actions challenging the decision of respondent City of Seattle to allow construction of an 89-unit apartment complex for low income, elderly tenants.

In the first case, appellants contend that Seattle's Department of Construction and Land Use erred in excusing the statutory requirement of a negative threshold determination. In the second case, appellants assert the City of Seattle engaged in illegal spot zoning. We reject both challenges and affirm the trial courts' decisions.

I

The controversies arise from the following facts. In 1979, St. Joseph's Church proposed building a home for the elderly on vacant land adjacent to the church. The building was to be funded in whole or part by federal grants. St. Joseph's Church, school and rectory were already on the proposed site, which is located in the Stevens neighborhood of Capitol Hill.

The Stevens Neighborhood Improvement Plan, adopted as a modification of the City of Seattle Comprehensive Plan, lists the proposed site as appropriate for institutional use. The surrounding area has multiple zoning designations. They include: BN (neighborhood business); BI (intermediate business); and RS 5000 (single family residence). There are, in addition, many nonconforming uses in the neighborhood. These nonconforming uses are principally multifamily units located to the south. Nonetheless, the neighborhood plan states that the City has a policy of preserving the single family residence character of Capitol Hill.

Procedurally, the case started when the Archdiocese

requested a rezone in order to build a 9–story, 102–unit complex for the elderly. A declaration of nonsignificance was rendered on July 2, 1979. That declaration was not appealed. On September 17, 1979, a hearing examiner recommended against the rezone. On May 19, 1980, the City Council overruled the hearing examiner's recommendations and granted the Archdiocese's request for contract rezoning. SANE then brought an action in King County Superior Court challenging the rezone. On October 29, 1980, the trial judge invalidated the rezone ordinance on procedural grounds not related to the present cause of action.

Early in 1981, the Archdiocese again submitted its proposal, but on a reduced scale. Pursuant to WAC 197–10–390, the Archdiocese sought a ruling that no new negative threshold determination had to be made. The City of Seattle Department of Construction and Land Use ruled that the second proposal was substantially the same as the first. It concluded, consequently, that no new threshold determination was needed.

SANE appealed first to a hearing examiner, then to the Superior Court and the Court of Appeals. Neither the hearing examiner nor the Superior Court Judge agreed with SANE's argument that the two proposals were sufficiently different to warrant a new threshold determination. Division One, by way of certification, deferred to the judgment of this court.

The second action involves the same parties but challenges directly the City of Seattle's second approval of the rezone request. Procedurally, this second action followed a similar path as the first. When, as noted above, the Archdiocese applied for the second rezone in January of 1981, the Department of Construction and Land Use and a hearing examiner recommended that this application for rezone be approved. The Urban Development and Housing Committee of Seattle reviewed the record and also recommended approval. On August 3, 1981, the full City Council adopted the hearing examiner's conclusions and granted the rezone.

SANE again brought suit in superior court, this time

challenging the City's decision to grant a rezone. SANE alleged, *inter alia,* that the Council's actions were arbitrary and capricious. Judge Noe disagreed and Division One certified this case, along with the one discussed above, to this court.

After certification, the cases were consolidated. Although they involve the identical parties, the cases raise two distinct issues.

## II

The first controversy involves application of WAC 197–10–390. That regulation adopted pursuant to the provisions of the State Environmental Policy Act of 1971 (SEPA), RCW 43.21C, provides that a threshold determination by a lead agency is binding upon all agencies and that "[n]o agency shall repeat the threshold determination procedures for *substantially the same proposal.*" (Italics ours.) Here, SANE challenges the conclusion that the proposed project fell within the terms of this regulation. SANE urges that, contrary to the agency's conclusion, the projects were in fact not substantially the same. SANE's argument for dissimilarity is two–pronged. First, SANE contends the area surrounding the project had significantly changed during the 20 months between applications. Second, SANE urges the building plans submitted in conjunction with the second project were not "substantially the same" as that submitted previously. Both arguments are without merit.

SANE cites several changes in the environment as requiring a new threshold determination. Those changes include (1) a new 10–unit townhouse in the area which increased traffic, (2) new businesses in the area increasing traffic, and (3) increased use of St. Joseph's school facilities by outside groups (again resulting in increased traffic).

To attack the proposition that the projects were substantially the same, SANE contends that the new project had (1) a different number of apartments (89 vs. 102), (2) a skybridge, (3) a different number of stories (7 vs. 9), and (4) an increased square footage (29,792 vs. 30,160).

After citing these differences, SANE argues that the hearing examiner did not properly consider them prior to determining that no new threshold determination need be made.

We do not agree that these differences negate the agency determination that the projects were substantially the same. To begin with, when informed of these "significant" changes in the project and site, the hearing examiner testified that alleged changes would not affect his ruling concerning the need for a threshold requirement. In addition, all of the changes in the building mitigated the adverse effects of the project. For instance, both the height and number of units of the building were reduced.

Moreover, the alleged neighborhood changes, cited as establishing that the projects required a new threshold determination, were only slightly relevant to the effect a home for the elderly would have on this area. For example, SANE suggested that increased traffic was a problem in the area. The increased traffic problems associated with elderly housing, however, are minimal, since few residents of elderly housing own or operate motor vehicles. Under these circumstances, we agree that a new threshold determination is not required.

We also reject SANE's second attack on the trial court's decision. That procedural attack relates to evidence considered by the judge. Citing *Cook v. Clallam Cy.*, 27 Wn. App. 410, 618 P.2d 1030 (1980) for the proposition that a reviewing judge cannot take evidence beyond that considered by the agency, SANE argues that the trial judge erred in accepting the Archdiocese's offer to withdraw the skybridge. Appellant's reliance on *Cook* is misplaced. In *Cook*, the trial judge conducted a trial de novo and elicited testimony from witnesses who had not appeared before the agency. He then issued a writ of mandamus ordering that the County grant the building permit the agency had denied. Division Two reversed the trial court. It held that an order of mandamus was not proper to compel an agency to perform a discretionary act. The court also concluded

that the trial judge erred by conducting a trial de novo. Neither of these errors were committed here. The trial judge, in affirming the agency determination, did not order the agency to act. Moreover, the trial judge did not conduct a trial de novo. When the trial judge expressed concern about the skybridge (an aspect of the building already considered by the agency), the Archdiocese responded by offering to remove it. The trial judge simply agreed with the proposal. Unlike *Cook,* the trial judge in the present case considered only evidence which the agency also had before it. Thus, no principles of agency autonomy were violated by the trial judge's actions.

### III

SANE's second appeal is a direct attack on the City Council's decision to grant a rezone. While SANE makes eight assignments of error, its case can be reduced to several related arguments.

SANE's principal contention is that the City Council's action in granting the rezone was arbitrary and capricious. To support that proposition, SANE alleges first that the judge improperly considered the land use decisions as legislative rather than adjudicatory in nature. Citing several appearance of fairness cases (*i.e., Fleming v. Tacoma,* 81 Wn.2d 292, 502 P.2d 327 (1972)), SANE concludes that the judge's characterization of the problem meant that he unnecessarily deferred his judgment to that of the City Council. SANE's argument is unpersuasive. First, whether an agency action is adjudicatory or legislative, an agency's determination will still be granted some deference. *See Leonard v. Bothell,* 87 Wn.2d 847, 557 P.2d 1306 (1976). Second, the trial judge did consider, independently, the issue of whether the development would benefit the public. Finally, as discussed below, the project clearly is beneficial to the community.

SANE next argues that the City's actions constitute an illegal spot zone. This argument was carefully considered and rejected by the trial court. We affirm that decision.

■ The most recent test for a spot zone is contained in *Save Our Rural Env't v. Snohomish Cy.,* 99 Wn.2d 363, 662 P.2d 816 (1983) *(SORE).* Spot zoning is zoning action by which a smaller area is singled out of a larger area or district and specially zoned for a use classification totally different from, and inconsistent with, the classification of surrounding land and not in accordance with the comprehensive plan. When faced with a rezone challenge, our main inquiry is whether the zoning action bears a substantial relationship to the general welfare of the affected community. *SORE.* Furthermore,

> [o]nly where the spot zone grants a discriminatory benefit to one or a group of owners to the detriment of their neighbors or the community at large without adequate public advantage or justification will the county's rezone be overturned.

*SORE,* at 368.

The trial judge used a similar test, although his opinion cited the criteria of *Smith v. Skagit Cy.,* 75 Wn.2d 715, 743, 453 P.2d 832 (1969).

Under any test, however, the City's actions are sustainable. Ample evidence supports the trial judge's findings that (1) the land is not suitable for single family residences; (2) housing for the elderly is not totally different from or inconsistent with single family residences; (3) the rezone is not for private gain because it is owned by a nonprofit organization and used solely for the benefit of the elderly; and (4) the project promotes the public welfare because it provides needed housing for a significant segment of the community.[1]

---

[1]The trial judge, citing *Hayden v. Port Townsend,* 93 Wn.2d 870, 613 P.2d 1164 (1980) observed that the instant case involved a more relaxed zoning classification and suggested that under *Hayden* he was authorized to do a less meticulous evaluation of the relationship between a rezone and the promotion of public welfare. We believe the promotion of public welfare is equally important in either case. Nonetheless, for the reasons stated above, we concur in the trial judge's conclusion that this rezone promoted the general welfare. To the extent that language in *Hayden* suggests the contrary, it is overruled.

Moreover, the above cited factors reflect both the trial judge's and the City Council's judgment that the proposal by the Archdiocese presented a unique opportunity to allow elderly residents the chance to remain in a residential neighborhood in affordable housing. It is not our place to disturb an agency decision reached after extensive factfinding hearings which provided ample opportunity for all concerned to be heard.

Finally, we agree that the proposal will have a minor impact on the area. The building will be in the shadow of St. Joseph's and so will not protrude. As noted above, traffic problems, always a concern in residential areas, will not be aggravated to any real extent by elderly residents.

SANE's final assertion that the project does not comply with the City's comprehensive plan which encourages single family residences is without merit. We agree with the trial judge that the project generally conforms with the plan. *See Cathcart–Maltby–Clearview Comm'ty Coun. v. Snohomish Cy.*, 96 Wn.2d 201, 212, 634 P.2d 853 (1981). Here, the comprehensive plan contemplated institutional use of this particular block. Housing developments for the elderly are similar to such institutional uses as schools or dormitories. *See* Memorandum Opinion. Clerk's Papers, at 9. The proposed use is not inconsistent with the plan's goal of encouraging single family residences. High density problems, associated with apartments, *i.e.*, increased noise, traffic, children, will not be present in this project, so it is unlikely the project will deter the development of single family residences in the area. Finally, both uses are essentially residential in nature and are thus not incompatible.

In sum, we conclude the City of Seattle's action in granting the contract rezone was neither procedurally infirm nor an illegal spot rezone. The judgments of both trial courts are affirmed.

WILLIAMS, C.J., UTTER, BRACHTENBACH, DOLLIVER, DORE,

288

DIMMICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.