[No. 39421-5-I. Division One. August 25, 1997.]

SWINOMISH INDIAN TRIBAL COMMUNITY, *Respondent*,
v. ISLAND COUNTY, *Appellant*.

---

554

*James E. Lobsenz, Nicholas P. Scarpelli, Jr., Kristine A. Brown,* and *Carney, Badley, Smith & Spellman;* and *William H. Hawkins, Prosecuting Attorney,* and *A.O. Denny, Deputy,* for appellant.

*Alix Foster* of *Office of Tribal Attorney,* for respondent.

AGID, J. — The trial court granted summary judgment to the Swinomish Indian Tribal Community on its claim against Island County for an injunction under the Indian Graves and Records Act. The order required the County to notify applicants who apply for a permit involving ground-disturbing activities if the proposed excavation site lies within a designated Indian archeological site or burial ground, and to provide the Tribe with a copy of that notice. Because issuing a permit is not a direct violation of the Indian Graves and Records Act, we hold that the Act does not impose a duty on the County to develop and implement notification procedures. By failing to adopt such procedures, however, the County violated its own Shoreline Management Master Plan. Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

FACTS

On March 30, 1995, the Island County Health Department issued a permit to Georgia Nemnich to repair a sewage disposal system on a parcel of property lying within recorded archaeological site No. 451S13 on Whidbey

Island. Site No. 451S13 is located on Penn Cove at Snakelum Point and is clearly marked as an archaeological site on archaeological site maps of which Island County has copies.[1] The maps show that there are archeological sites located along almost the entire rim of Penn Cove. Snakelum Point was a major Skagit village during historic times, and human burials are not uncommon in shell middens such as those present on the Nemnich property.[2]

The sewer repair permit authorized Nemnich to excavate two large Douglas fir trees and their stumps adjacent to the house; remove a garden area around the trees; dig a trench along the back of the house to locate the sewer outlet pipe; dig a 20-foot trench from the sewer outlet pipe to the septic tank; and excavate a hole to accommodate the new tank. Neither party disputes that during excavation the contractor disturbed a human burial site and "knocked a human skull into the excavated trench." The contractor interrupted the excavation and notified the county coroner's office, which in turn notified the Swinomish Indian Tribal Community's contract archaeologist. Archeologists retained by the Tribe investigated the excavation site and proposed an alternate route for the sewer line. They then hand dug the trench for the sewer line to avoid further disturbance to human burial sites and to assess the sediments for intact cultural deposits. The Tribe also conducted a reburial ceremony for the remains that had been disturbed.

On September 28, 1995, the Tribe filed this action for damages and injunctive relief against the County. The Tribe alleged that the County failed to take reasonable precautionary measures to assure no grave site would be

---

[1] It is undisputed that the Island County Planning Department has access to archaeological site maps pursuant to an agreement dated October 25, 1983, with the State Historic Preservation Officer. Under the agreement, the Planning Department is required to limit access to Planning Department personnel in the performance of their review duties in order to avoid the looting or depredation that might result if the maps were accessible to the public.

[2] The Swinomish Indian Tribal Community includes descendants of the Lower Skagit, Kikialus, Samish, and Swinomish Indian bands and is a federally recognized Indian tribe.

disturbed before issuing the permit. In particular, it alleged that the County failed to consult the maps in its possession which depict the location of recorded archaeological sites. The Tribe asked the court to direct the County "to develop and institutionalize procedures directed at preventing adverse impacts to archaeological concerns prior to authorizing land disturbing activities on recorded archaeological sites." Both sides moved for summary judgment, and the trial court issued a letter decision granting the Tribe's motion. The court denied the Tribe's request for damages, but issued an injunction directing county personnel responsible for processing permits to consult maps to be provided by the Tribe depicting both its aboriginal lands and recorded archaeological sites within county boundaries. In the event that the maps indicated the proposed site of a ground-disturbing project was located within a recorded archaeological site, the court directed the County to notify the applicant and provide the Tribe with a copy of that notification.

## DISCUSSION

■ In reviewing a summary judgment order, the reviewing court engages in the same inquiry as the trial court, construing facts and reasonable inferences from them in the light most favorable to the nonmoving party. *Mountain Park Homeowners Ass'n, Inc. v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994). The trial court should grant summary judgment only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Mountain Park*, 125 Wn.2d at 341. Questions of law are reviewed de novo. *Mountain Park*, 125 Wn.2d at 341.

### Indian Graves and Records Act

The County argues that it is exempt from the Indian Graves and Records Act (IGRA), RCW 27.44, for two reasons: (1) only a party injured as a result of a criminal

violation of the Act may bring a civil action under the statute; and (2) it is exempt because issuing the permit was a law enforcement action. *See* RCW 27.44.040(3)(b) (exempting "[a]ctions taken in the performance of official law enforcement duties"). RCW 27.44.901 requires that IGRA be liberally construed to achieve the Legislature's intent. The Legislature's intent in adopting IGRA is set forth in RCW 27.44.030, as follows:

The legislature hereby declares that:

(1) Native Indian burial grounds and historic graves are acknowledged to be a finite, irreplaceable, and nonrenewable cultural resource, and are an intrinsic part of the cultural heritage of the people of Washington. The legislature recognizes the value and importance of respecting all graves, and the spiritual significance of such sites to the people of this state;

(2) There have been reports and incidents of deliberate interference with native Indian and historic graves for profit-making motives;

(3) There has been careless indifference in cases of accidental disturbance of sites, graves, and burial grounds;

(4) Indian burial sites, cairns, glyptic markings, and historic graves located on public and private land are to be protected and it is therefore the legislature's intent to encourage voluntary reporting and respectful handling in cases of accidental disturbance and provide enhanced penalties for deliberate desecration.

RCW 27.44.040(1) provides:

Any person who knowingly removes, mutilates, defaces, injures, or destroys any cairn or grave of any native Indian . . . is guilty of a class C felony punishable under chapter 9A.20 RCW. Persons disturbing native Indian graves through inadvertence, including disturbance through construction, mining, logging, agricultural activity, or any other activity, shall reinter the human remains under the supervision of the appropriate Indian tribe. The expenses of reinterment are to be paid by the office of archaeology and historic preservation pursuant to RCW 27.34.220.

RCW 27.44.050 provides:

> (1) Apart from any criminal prosecution, an Indian tribe or enrolled member thereof, shall have a civil action to secure an injunction, damages, or other appropriate relief against any person who is alleged to have violated RCW 47.44-.040. . . . The action may be filed in the superior or tribal court of the county in which the grave, cairn, remains, or artifacts are located, or in the superior court of the county within which the defendant resides. . . .
>
> . . . .
>
> 3(b) The court may grant injunctive or such other equitable relief as is appropriate . . . . including the reinterment of human remains . . .

■ Island County urges us to read RCW 27.44.050 as limited to civil actions against persons found to have violated RCW 27.44.040, the criminal statute. While RCW 27.44.050 clearly contemplates that a person who violates the criminal statute also be subject to civil liability, it does not state that a civil action may be brought *only* in that circumstance. Given the Legislature's express directive that IGRA be liberally construed to effect its purposes, we decline to infer such a limitation where none is stated.[3] *See Timberline Air Serv. Inc. v. Bell Helicopter-Textron, Inc.*, 125 Wn.2d 305, 312, 884 P.2d 920 (1994) (the purpose of statutory construction is to effect the Legislature's intent); *Food Servs. of Am. v. Royal Heights, Inc.*, 123 Wn.2d 779, 788, 871 P.2d 590 (1994) (while a statutory declaration of policy has no operative force by itself, it is useful in determining how the Legislature intended the entire statute to operate and can be crucial to interpretation of the statute).

We disagree with the County that the Legislature's

---

[3]The County argues that the only relief available under the statute for a noncriminal violation is reinterment of any remains that are disturbed. But the reference in RCW 27.44.050(3)(b) to "including the reinterment of human remains" suggests that the Legislature did not intend to limit the remedies for a civil violation of the statute to reinterment alone just because it provided in RCW 27.44.040(1), as one remedy, that "[p]ersons disturbing native Indian graves through inadvertence . . . shall reinter the human remains under the supervision of the appropriate Indian tribe."

intention in adopting the civil statute was "merely [to] foster 'voluntary reporting and respectful handling in cases of accidental disturbance.' " The County's argument ignores the remainder of RCW 27.44.030, which clearly states that the Legislature also intended to address situations where "[t]here has been careless indifference in cases of accidental disturbance of sites, graves, and burial grounds." RCW 27.44.030(3); *State v. Hansen*, 122 Wn.2d 712, 717, 862 P.2d 117 (1993) (in determining legislative intent, a court construes the language in the context of the statute as a whole without placing undue emphasis on any individual section). For that reason, we reject the County's argument that RCW 27.44.030 reflects any intention on the part of the Legislature to limit the ability to bring a civil action under IGRA only to those instances where there has been a violation of its criminal provisions.

We also reject the County's argument that it is exempt from civil liability under IGRA because issuing a sewer repair permit is equivalent to "official law enforcement duties." *See* RCW 27.44.040(3)(b). The County argues that issuing a sewer repair permit falls within the parameters of "official law enforcement duties" because the purpose of issuing the permit is to assure that the sewer system complies with the requirements of applicable health laws. "Official law enforcement duties," however, is generally understood in a far narrower sense, i.e., duties related to preserving the peace. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 813, 828 P.2d 549 (1992) (a term not defined in a statute should be given its plain and ordinary meaning unless a contrary legislative intent is indicated); *National Fed'n of Retired Persons v. Insurance Comm'r*, 120 Wn.2d 101, 112, 838 P.2d 680 (1992) (in the absence of a statutory definition of a term, a court may resort to a law dictionary to ascertain the plain meaning of the term); BLACK'S LAW DICTIONARY 458 (5th ed. 1983) (a law enforcement officer is an officer whose duty it is to preserve the peace).

Here, the legislative history of the Act clearly reflects

that the Legislature intended the reference to "official law enforcement duties" in the narrower sense in which it is commonly understood. Immediately prior to House passage of Substitute Senate Bill 5807, a point of inquiry was raised about whether the exemption for law enforcement duties extended to the official duties of county coroners. HOUSE JOURNAL, Reg. Sess., April 14, 1989, at 1457. While that question was answered in the affirmative as to county coroners, the need to raise the point at all demonstrates that the Legislature did not intend the reference to "official law enforcement duties" to be so broadly construed as the County argues. There is also no factual basis in the record for the County's claim that its action in issuing the permit fell within its "official law enforcement duties." Nothing in the record suggests that issuing the permit here was other than routine or that it occurred in the context of an emergency or an enforcement action. For both reasons, we reject the County's argument that its action in issuing the permit was an "action taken in the performance of official law enforcement duties" for purposes of IGRA.

■ While we agree with the Tribe that civil liability under IGRA is not limited to those who commit a criminal violation of the statute and that issuing a sewer repair permit is not "an action taken in the performance of official law enforcement duties," we disagree that IGRA supports the imposition of civil liability or creates a duty on the part of the County to notify the Tribe under the facts of this case. Merely issuing a permit is not itself an activity that disturbs a grave. We therefore conclude that the County did not violate any duty it had under the statute as written.[4]

---

[4]We also reject the Tribe's argument that the common law imposes such a duty on the County. As the County notes, not all recorded archaeological sites contain dead bodies, nor is there any evidence that even if the County had consulted the maps in its possession, it would have known that this one did. As such, there is no basis on which to invoke the common-law proscription against unauthorized or negligent handling of a dead body or burial site under Washington law.

Shoreline Management Master Plan

Although we hold that IGRA does not impose a duty on an entity whose action does not directly disturb a grave, we agree with the trial court that the County was obligated to establish procedures to aid in protecting such sites under its Shoreline Management Master Plan (SMMP). The historical/cultural element of the plan[5] explains its purpose as follows:

> This element considers those shoreline areas which are rich in archaeological and historical data pertaining to Island County's early development. It is the intent of this element to establish policies which will aid in the protection and restoration of buildings, sites and areas having historic, cultural, educational or scientific value.

SMMP at 53-54. The element identifies as its goal the protection, preservation and restoration of historical, cultural, educational and scientific sites on the shorelines of the County. SMMP at 54. Toward that end, it expressly directs the County to "[i]dentify areas containing potentially valuable historical/cultural features and establish procedures for protecting and preserving them." SMMP at 54. It also requires that the County "[i]nclude in shoreline permits special provisions which require developers to notify local governments if items of possible archaeological or historical significance are uncovered during excavation or dredging." SMMP at 54.

The County has apparently adopted procedures in connection with issuing other types of land use permits to protect sites having historic or cultural value. Its failure to adopt any procedures to protect these sites when it issues sewer repair permits, however, violates its SMMP. Because a sewer repair permit will often result in

---

[5]RCW 90.58.100(2)(g), the Shoreline Management Act (SMA), provides that, where appropriate, a master plan shall include an historic or cultural element for the protection and restoration of sites and areas having historic or cultural value. The historic/cultural element of the County's SMMP states that the County contains one of the largest historical preservation districts in the Puget Sound Basin and the Pacific Northwest. SMMP at 54.

extensive excavation, there is no rational basis for distinguishing between permits of this kind and other types of land use permits. The importance of implementing protective procedures is especially critical where, as here, in an effort to keep Indian archeological sites from being looted, only the County knows where they are. Even the most contentious landowner cannot find out whether there are Indian burial sites on property he intends to excavate unless the County tells him. Thus, the County's omission greatly increases the risk that landowners will inadvertently disturb such sites and, thereby, open themselves to liability under the IGRA. For this reason, we conclude that the trial court was within its jurisdiction in ordering the County to adopt procedures reasonably calculated to protect such sites. *See* RCW 90.58.210(1); *Hedlund v. White*, 67 Wn. App. 409, 414, 836 P.2d 250 (1992) (a government entity may base an action for injunctive relief on the SMA).

 The court exceeded its jurisdiction, however, when it prescribed the specific procedures the County must adopt. While this was brought as an action for injunctive relief, the court's order was essentially a mandate to the County because it ordered the County to perform a statutory duty. *See* RCW 7.16.160. But under its SMMP, the County has discretion to determine *how* it is going to implement the requirement that it adopt procedures to protect sites like the one at issue here. While a court may order a municipality to fulfill a duty, it may not order that it do so in a specific manner. *Peterson v. Department of Ecology*, 92 Wn.2d 306, 314-15, 596 P.2d 285 (1979); *Cook v. Clallam County*, 27 Wn. App. 410, 413, 618 P.2d 1030 (1980), *review denied*, 96 Wn.2d 1008 (1981). We therefore remand for entry of an order requiring the County to develop and adopt procedures that implement the policies adopted under its SMMP, i.e., to identify and to take steps to preserve and protect areas that have historic or cultural value when issuing permits which could disturb them. Procedures such as those suggested by the trial court

would not be unduly burdensome. The County routinely consults archaeological site maps in connection with issuing other types of land use permits. There is no reason why it cannot implement similar procedures when it issues routine sewer repair permits.

Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

GROSSE and COX, JJ., concur.