[Nos. 50913-1, 50914-0. En Banc. June 12, 1986.]

WEST MAIN ASSOCIATES, *Respondent,* v. THE CITY
OF BELLEVUE, ET AL, *Appellants.*

THE BELLEVUE DOWNTOWN ASSOCIATION, *Respondent,* v.
THE CITY OF BELLEVUE, ET AL, *Appellants.*

*John H. Strasburger* and *Christopher R. Osborn* (of
*Short & Cressman*), for appellants.

*G. Richard Hill* and *John C. McCullough* (of *Foster,
Pepper & Riviera*), for respondent West Main Associates.

48

 

*Hillis, Cairncross, Clark & Martin, P.S.,* by *Glenn J. Amster,* for respondent Bellevue Downtown Association.

UTTER, J.—The City of Bellevue appeals from a trial court's orders granting partial summary judgment in favor of West Main Associates and summary judgment for Bellevue Downtown Association. The trial court concluded that Bellevue ordinance 3359 unconstitutionally interfered with rights guaranteed by this court's vesting doctrine. We agree with the trial court.

In February 1981, the City of Bellevue enacted a set of ordinances to regulate and encourage downtown growth. That set of ordinances was the product of 6 years of study. Upon enactment of the ordinances, West Main Associates took its first steps toward development of Meydenbauer Place, a 22–story mixed–use retail and residential structure on a 1.1–acre tract in "Old Bellevue" at the southeastern edge of Bellevue's central business district. In August 1983, West Main Associates submitted its application for administrative design review of Meydenbauer Place. On October 11, 1983, it issued a draft environmental impact statement, on which a hearing was held November 10, 1983. West Main Associates continued to revise and refine its design plans.

In March 1984, the Bellevue City Council met in study session to discuss development within the central business district "transition area." The transition area is the portion of the business district immediately bordering the surrounding residential area, and includes the designated site for Meydenbauer Place. The council considered several proposals regarding development in the transition area, including a city–wide ordinance to establish the point at which rights to develop property vest.

West Main Associates completed and submitted revised

administrative design review materials on March 30, 1984. A few days later, on April 2, 1984, the City of Bellevue added two sections to its building code by enacting ordinance 3359. The ordinance prohibited the filing of a building permit application for any proposed project in Bellevue until all of the following procedures are complete: (1) administrative design review approval; (2) site plan review approval; (3) administrative conditional use approval; (4) modification of landscaping approval; (5) design review approval by the planning commission; (6) passage by the city council of any necessary ordinance approving a conditional use, shoreline conditional use, planned unit development or planned residential unit development; (7) approval by the board of adjustment of a variance or shoreline variance; and (8) issuance of a shorelines substantial development permit. The ordinance specifically provided that if any appeal were taken with respect to the first four of these approvals no building permit application would be accepted until the appeal was finally resolved. The ordinance also provided that filing of applications for any of these preliminary approvals would not vest rights; development rights would be vested only as of the time a building permit application was filed.

The ordinance established several hurdles for West Main to clear before it could vest its rights by filing for a building permit. West Main's investment on April 2 is not known. However, by July 13, 1984, West Main estimated expenditures of over $500,000 on design phase costs for Meydenbauer Place.

After enactment of the ordinance, West Main Associates and Bellevue Downtown Association, a nonprofit corporation consisting of residents, business persons, and landowners in downtown Bellevue, filed separate suits against Bellevue. Each party sought, among other things, a declaratory judgment that the ordinance was unconstitutional and unenforceable. West Main also claimed monetary damages on three theories: (1) damages for a "taking" of its property without compensation in violation of the Fifth

Amendment; (2) damages as authorized by 42 U.S.C. § 1983 (1983) for the deprivation of constitutional rights by a state official acting under color of state authority; and (3) damages as authorized by RCW 64.40 for the interference with private property rights by a local government acting in *knowing* violation of constitutional rights.

Bellevue moved for summary judgment on the pleadings. After a hearing the trial court denied the motion, and entered an order granting summary judgment in favor of Bellevue Downtown Association and an order granting partial summary judgment in favor of West Main Associates. The trial court expressly directed entry of the latter judgment as a final judgment. In its letter opinion the court concluded that the ordinance improperly interfered with the vesting doctrine, and suggested that the ordinance violated due process requirements.[1]

We agree with the trial court. We have recognized that "[a]lthough less than a fee interest, development rights are beyond question a valuable right in property." *Louthan v. King Cy.*, 94 Wn.2d 422, 428, 617 P.2d 977 (1980), relying on *Penn Cent. Transp. Co. v. New York*, 438 U.S. 104, 57 L. Ed. 2d 631, 98 S. Ct. 2646, *reh'g denied*, 439 U.S. 883, 58 L. Ed. 2d 198, 99 S. Ct. 226 (1978). *See also* C. Siemon, W. Larsen & D. Porter, *Vested Rights* 61–68 (1982). Despite the expanding power over land use exerted by all levels of government, "[t]he basic rule in land use law is still that, absent more, an individual should be able to utilize his own land as he sees fit. U.S. Const. amends. 5, 14." *Norco Constr., Inc. v. King Cy.*, 97 Wn.2d 680, 684, 649 P.2d 103 (1982).

One aspect of this court's protection of these rights is our vested rights doctrine. Under this doctrine, developers who file a timely and complete building permit application

---

[1]On July 30, 1984, before entry of the trial court's summary judgment, Bellevue repealed ordinance 3359 retroactively to the day of its enactment. Because West Main still has claims for damages pending in the court below, Bellevue's action does not render this case moot. *See State v. Turner*, 98 Wn.2d 731, 733, 658 P.2d 658 (1983).

obtain a vested right to have their application processed according to the zoning and building ordinances in effect at the time of the application. The Washington doctrine protects developers who file a building permit application that (1) is sufficiently complete, (2) complies with existing zoning ordinances and building codes, and (3) is filed during the effective period of the zoning ordinances under which the developer seeks to develop. *See, e.g., Allenbach v. Tukwila,* 101 Wn.2d 193, 676 P.2d 473 (1984). Once a developer complies with these requirements a city cannot frustrate the development by enacting new zoning regulations.

The purpose of the vesting doctrine is to allow developers to determine, or "fix," the rules that will govern their land development. *See* Comment, *Washington's Zoning Vested Rights Doctrine,* 57 Wash. L. Rev. 139, 147–50 (1981). The doctrine is supported by notions of fundamental fairness. As James Madison stressed, citizens should be protected from the "fluctuating policy" of the legislature. *The Federalist No. 44,* at 301 (J. Madison) (J. Cooke ed. 1961). Persons should be able to plan their conduct with reasonable certainty of the legal consequences. Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation,* 73 Harv. L. Rev. 692 (1960). Society suffers if property owners cannot plan developments with reasonable certainty, and cannot carry out the developments they begin.

> Of course, all institutions, including government, like to keep options open. But while keeping options open normally involves a price, government can keep its options open at no cost to itself in the vesting game because virtually all the risk of loss is initially imposed on the developer. Unfortunately, that loss is still a social cost, ultimately borne by all, whether or not government recognizes it.

(Footnote omitted.) Hagman, *The Vesting Issue: The Rights of Fetal Development vis a vis The Abortions of Public Whimsy,* 7 Envtl. L. 519, 533–34 (1977).

■ The City of Bellevue attempted to preempt this

court's vesting doctrine by enacting ordinance 3359. The City argues that ordinance 3359 represents a valid exercise of the City's police power. However, this court has often ruled that due process considerations limit how local governments use their police power. In *Norco Constr. Co.,* we wrote that

> While local governments exist to provide necessary public services to those living within their borders and to avoid harms in their protection of the public's health, safety, and general welfare, exercise of this authority must be reasonable and rationally related to a legitimate purpose of government such as avoiding harm or protecting health, safety and general, not local or parochially conceived, welfare.

97 Wn.2d at 685. Thus a land use ordinance satisfies due process standards only if it (1) is aimed at achieving a legitimate public purpose, and (2) uses means to achieve that purpose that are reasonably necessary and not unduly oppressive upon individuals. *See, e.g., Save a Valuable Env't v. Bothell,* 89 Wn.2d 862, 576 P.2d 401 (1978); *Goldblatt v. Hempstead,* 369 U.S. 590, 8 L. Ed. 2d 130, 82 S. Ct. 987 (1962); *Lawton v. Steele,* 152 U.S. 133, 38 L. Ed. 385, 14 S. Ct. 499 (1894); *see also* Comment, *Testing the Constitutional Validity of Land Use Regulations: Substantive Due Process as a Superior Alternative to Takings Analysis,* 57 Wash. L. Rev. 715, 718–22 (1982).

The vesting rule of the Bellevue ordinance does not meet the due process standards of the Fourteenth Amendment. We acknowledge that some commentators advocate that governments legislatively establish vesting guidelines. *See, e.g., Vested Rights;* Heeter, *Zoning Estoppel: Application of the Principles of Equitable Estoppel and Vested Rights to Zoning Disputes,* 1971 Urb. L. Ann. 63, 91–98. In this case, however, Bellevue has gone beyond merely establishing guidelines. The City denies a developer the ability to vest rights until after a series of permits is obtained. The

ordinance thus is unduly oppressive upon individuals. As the trial court noted, the preapplication procedures established by the ordinance are vague and discretionary. The City delays the vesting point until well after a developer first applies for City approval of a project, and reserves for itself the almost unfettered ability to change its ordinances in response to a developer's proposals. The ordinance completely upsets our vesting doctrine's protection of a citizen's constitutional right to develop property free of the "fluctuating policy" of legislative bodies.

Today's decision that ordinance 3359 is unconstitutional does not affect the powers of municipalities that we have recognized on other occasions. Municipalities can regulate or even extinguish vested rights by exercising the police power reasonably and in furtherance of a legitimate public goal. *Hass v. Kirkland,* 78 Wn.2d 929, 481 P.2d 9 (1971). Furthermore, a vested right does not guarantee a developer the ability to build. A vested right merely establishes the ordinances to which a building permit and subsequent development must comply. For example, under the State Environmental Policy Act of 1971 a municipality has the discretion to deny an application for a building permit because of adverse environmental impacts even if the application meets all other requirements and conditions for issuance. *Polygon Corp. v. Seattle,* 90 Wn.2d 59, 578 P.2d 1309 (1978); *Cook v. Clallam Cy.,* 27 Wn. App. 410, 618 P.2d 1030 (1980).

This case reveals the tension between a landowner's traditional right to utilize property and the government's recently developed power to monitor land use. Bellevue has misused its power by denying developers the ability to determine the ordinances that will control their land use. The constitution obligates this court to affirm the trial court's declaration of the illegality of Bellevue's ordinance 3359. We therefore affirm the trial court's summary judgment in favor of the Bellevue Downtown Association and

54

the partial summary judgment in favor of West Main Associates.

DOLLIVER, C.J., BRACHTENBACH, PEARSON, CALLOW, GOODLOE, and DURHAM, JJ., and HAMILTON, J. Pro Tem., concur. ANDERSEN, J., concurs in the result.

After modification, further reconsideration denied September 11, 1986.