[No. 19119–5–I. Division One. November 30, 1987.]

VICTORIA TOWER PARTNERSHIP, *Appellant,* v. THE CITY OF SEATTLE, ET AL, *Respondents.*

*Michael K. Vaska, G. Richard Hill,* and *Foster, Pepper & Riviera,* for appellant.

*Jeffrey M. Eustis, J. Richard Aramburu, Raymond H. Siderius, Siderius, Lonergan & Crowley, Thomas A. Goeltz,* and *Davis, Wright & Jones,* for respondents.

DURHAM, J.*—This case concerns a proposal to build an apartment complex, including a 16–story tower, on the crest of Seattle's Queen Anne Hill. The Seattle City Council (City Council) partially approved the proposal, but limited the tower's height to eight stories. We hold that the City Council's decision to limit the building's height violated the vested rights doctrine and we remand for reconsideration of that issue.

A 51–unit brick apartment building presently exists at 100 West Highland Drive. The building is three stories tall on the north side and four stories on the south. On July 8, 1980, Victoria Tower Partnership (Victoria) applied to the City for a master use permit in order to construct a 76–unit addition to that building. Victoria proposed the construction of eleven 2–story townhouses and a hexagonal 16–story tower accommodating the other 65 units. The tower's projected height is 174 feet.

The nine blocks in the immediate vicinity of Victoria's project site contain buildings considerably shorter than 16 floors. In that area, the majority of apartment buildings have three to four stories and the majority of private homes have one to three stories, the only significant exception being a 9–story condominium building immediately down the hill from the project. Victoria's site, however, is zoned to allow a maximum building height of 239 feet.

---

*This appeal was heard by a Supreme Court Justice, a Superior Court Judge, and a retired Superior Court Judge sitting as Court of Appeals Judges Pro Tempore in Division One.

On January 28, 1981, the Department of Construction and Land Use (DCLU) issued the Draft Environmental Impact Statement (DEIS). On July 6, 1981, the City Council adopted new Multi–Family Land Use Policies, which would limit building height on Victoria's site to 60 feet. On June 25, 1982, the DCLU issued the Final Environmental Impact Statement (FEIS).

On October 19, 1982, the DCLU director approved the project. He found that the tower would be inconsistent with the neighborhood scale, but that this inconsistency could not be corrected because the tower conformed to the zoning code and the multi–family policies had not been adopted early enough to be applicable to Victoria's proposal. The hearing examiner and the City Council rejected this analysis. The City Council concluded that the DCLU should have considered the multi–family policies and other environmental policies adopted pursuant to the State Environmental Policy Act of 1971 (SEPA), RCW 43.21C, even if the multi–family policies were adopted after Victoria applied for the permit and the DEIS was issued.

On remand, the DCLU director denied the permit because the project's incompatibility with the neighborhood's scale was inconsistent with the multi–family policies. The DCLU director also concluded that the project's scale could not be reasonably mitigated because a shorter tower was economically infeasible to Victoria. The hearing examiner affirmed the DCLU director's decision.

The City Council agreed with much of the hearing examiner's analysis, but modified his final decision. The City Council agreed that the project was "inconsistent with the City's adopted policies to insure that multiple use housing is built in scale with the neighborhood." The Council, however, decided that the adverse impact could be substantially mitigated if the tower were limited to eight stories, and approved the project based on that condition.

Victoria appealed this decision to the Superior Court. After 2 days of testimony, the trial judge dismissed with prejudice Victoria's challenges to the City Council's deci-

sion.[1] Victoria has appealed to this court.

## SEPA Background

We start our analysis with an introduction to SEPA. SEPA requires certain government agencies to establish environmental policies and regulations. RCW 43.21C.120. It also requires that environmental impact statements be prepared for "major actions having a probable significant, adverse environmental impact." RCW 43.21C.031. The environmental impact statement identifies environmental impacts and explores the extent to which the proposed action complies with the environmental policies and regulations adopted by the relevant agency. Cities can condition or deny building permits under SEPA if the proposal is inconsistent with those policies. RCW 43.21C.060; *Polygon Corp. v. Seattle*, 90 Wn.2d 59, 65, 578 P.2d 1309 (1978).

Pursuant to SEPA, Seattle adopted its own ordinance on environmental policy, Seattle Municipal Code (SMC) 25.04. That ordinance essentially mirrors the provisions of SEPA described above. The Seattle ordinance identifies the policies upon which Seattle agencies may condition or deny a project under SEPA. The following policies, as described in the DEIS, are relevant to a proposal's height, bulk and scale: (1) the Seattle Comprehensive Plan, under which the project site is designated for apartment buildings of approximately six stories, (2) the Seattle Zoning Code, which limits building height for the site to 239 feet, (3) Multi–Family Land Use Policies (proposed but not adopted at time of Victoria's application), under which building height on the project site cannot exceed 60 feet, and (4) Seattle 2000, Goals and Subgoals, under which buildings are to be built in scale with the rest of the neighborhood.

## Standard of Review

■ Appellate review of a city's denial of a building per-

---

[1]Because the trial was bifurcated, Victoria still has pending in the Superior Court a number of claims, including allegations of regulatory taking and violation of substantive due process.

mit on SEPA grounds is governed by the "clearly erroneous" test. *Polygon Corp.*, at 68–69; *Buttnick v. Seattle*, 105 Wn.2d 857, 860–61, 719 P.2d 93 (1986). Under this test:

> [Appellate judges] examine the entire record and all the evidence in light of the public policy contained in the legislation authorizing the decision. *Ancheta v. Daly*, 77 Wn.2d 255, 461 P.2d 531 (1969). The court does not substitute its judgment for that of the administrative body and may find the decision "'clearly erroneous'" only when it is "'left with the definite and firm conviction that a mistake has been committed.'" *Ancheta*, at 259–60.

*Polygon Corp.*, at 69.

Victoria argues that issues of law should be analyzed under the "error of law" standard, whereby the reviewing court may substitute its judgment for that of the administrative tribunal. *See Franklin Cy. Sheriff's Office v. Sellers*, 97 Wn.2d 317, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106 (1983). However, the "error of law" standard is not applicable to the current case. That standard comes from Washington's administrative procedure act (APA), RCW 34.04. RCW 34.04.130(6). However, the APA standards apply only to state agencies. *Riggins v. Housing Auth.*, 87 Wn.2d 97, 99–101, 549 P.2d 480 (1976). Local agencies, including city agencies, are not covered by the APA. *Plumbers & Steamfitters, Local 598 v. WPPSS*, 44 Wn. App. 906, 911, 724 P.2d 1030 (1986), *review denied*, 107 Wn.2d 1021, *cert. denied*, 107 S. Ct. 2481 (1987); RCW 42.17.020(1). Therefore, the APA's "error of law" standard does not apply to the Seattle City Council's decision in this case.

Accordingly, we will reverse the decision below only if we are left with a "definite and firm conviction" that the City Council made a mistake.

## VESTED RIGHTS DOCTRINE

Victoria contends that the City Council's decision violated the vested rights doctrine. The State Supreme Court has recently described the vested rights doctrine in the following manner:

Under [the vested rights doctrine], developers who file a timely and complete building permit application obtain a vested right to have their application processed according to the zoning and building ordinances in effect at the time of the application. The Washington doctrine protects developers who file a building permit application that (1) is sufficiently complete, (2) complies with existing zoning ordinances and building codes, and (3) is filed during the effective period of the zoning ordinances under which the developer seeks to develop. *See, e.g., Allenbach v. Tukwila,* 101 Wn.2d 193, 676 P.2d 473 (1984). Once a developer complies with these requirements a city cannot frustrate the development by enacting new zoning regulations.

The purpose of the vesting doctrine is to allow developers to determine, or "fix," the rules that will govern their land development. *See* Comment, *Washington's Zoning Vested Rights Doctrine,* 57 Wash. L. Rev. 139, 147–50 (1981). The doctrine is supported by notions of fundamental fairness. As James Madison stressed, citizens should be protected from the "fluctuating policy" of the legislature. *The Federalist No. 44,* at 301 (J. Madison) (J. Cooke ed. 1961). Persons should be able to plan their conduct with reasonable certainty of the legal consequences. Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation,* 73 Harv. L. Rev. 692 (1960). Society suffers if property owners cannot plan developments with reasonable certainty, and cannot carry out the developments they begin.

*West Main Assocs. v. Bellevue,* 106 Wn.2d 47, 50, 720 P.2d 782 (1986).

Victoria maintains that its vested rights were violated when the City Council based its decision on policies that had not been formally adopted at the time when Victoria applied for its permit. Both parties acknowledge that the Council relied on the multi–family policies in deciding to deny Victoria's application as to the full 16 stories. The multi–family policies were not officially adopted, however, until July 6, 1981, some 11 months after Victoria applied for its permit. Seattle City Council Resolution 26579 (subsequently codified at SMC 23.16.002(B)). Because these policies were not "fixed" until after Victoria applied for its

permit, the City Council's use of them violated Victoria's vested rights in the project.

■ The City Council apparently takes the position that the vested rights doctrine does not apply to SEPA decisions. Washington cases have not addressed this issue, but rather have only applied the doctrine in the context of zoning decisions. *See, e.g., West Main Assocs. v. Bellevue, supra; Norco Constr., Inc. v. King Cy.,* 97 Wn.2d 680, 649 P.2d 103 (1982). However, the vested rights doctrine is equally appropriate for SEPA ordinances. In *West Main Associates,* the State Supreme Court described the doctrine as applying not just to zoning ordinances, but to "zoning and building ordinances". *West Main Associates,* at 51. In the urban setting, SEPA ordinances address the same issues that are addressed by zoning ordinances, such as building heights, setbacks, open space, and density of housing. *See, e.g.,* Seattle's Multi–Family Land Use Policies, SMC 23.16.002(B). There can be no doubt that the SEPA provisions qualify as "zoning and building ordinances". Accordingly, we hold that the vested rights doctrine is applicable to SEPA policies.[2]

The City Council challenges the application of this doctrine by pointing out that the multi–family policies, although not adopted until later, were announced and proposed before Victoria even applied for its permit. The City Council argues that the vested rights doctrine is not violated if the applicant has been put on notice that a change in the law is pending. However, the State Supreme Court has repeatedly rejected any such "pending zoning change" exception to the vested rights doctrine. *Allenbach v. Tukwila,* 101 Wn.2d 193, 200, 676 P.2d 473 (1984). Under the

[2]The Seattle City Council has implicitly recognized this by adopting an ordinance that requires mitigation measures or denials under SEPA to be based on policies in effect when the DEIS was issued. SMC 25.05.660(A)(1). *See also* WAC 197–11–660(1)(a). This ordinance, however, was not applicable to the current permit application because it was made expressly inapplicable to proposals, such as Victoria's, that were initiated before the ordinance's October 1, 1984 effective date. *See* SMC 25.05.916(2).

vested rights doctrine, an ordinance must be operative before it can be used to evaluate a building permit application, regardless of the extent to which the applicant did or did not rely on previous law. *Allenbach v. Tukwila, supra.* Because the multi–family policies were not yet adopted when Victoria applied for its permit, we conclude that the City Council violated the vested rights doctrine in using them to condition Victoria's proposal.[3]

We remand this case for the City Council to reconsider its decision on the tower's height without using the multi–family policies. In so doing, we realize that the City Council's decision to limit the tower to eight stories might have been based not only on the multi–family policies, but also on other SEPA policies relating to height. However, the Council's explanation of the basis for its decision is ambiguous. The Council did not specifically identify in its written decision the policies it relied on, choosing instead to vaguely refer to a discussion of a handful of these policies in the FEIS, including the multi–family policies. Some of these other policies addressed building height or scale, some did not, and others did so, if at all, only impliedly.[4] It is difficult to tell which, if any, of these policies the City Council was referring to. The ambiguity is worsened by the fact that the City Council's deliberations on the height issue focused almost exclusively on the multi–family policies, not on these other policies. The Council apparently was asked to clarify the basis for its holding in a motion for reconsideration, but it declined to do so. We remand for the Council to clear up this ambiguity.

Moreover, even if one or more of these other policies

---

[3]Victoria also argues that the Council's use of the multi–family policies violated the transition rule of Seattle's land use code, SMC 23.04.010(D). Because of our holding that the City Council violated the vested rights doctrine, we need not decide if it violated the terms of its own ordinance.

[4]For example, Seattle Growth Policies discuss the "existing character of neighborhoods", a phrase that does not expressly concern height, but perhaps does so impliedly.

support a restriction on the tower's height, elimination of the multi–family policies from consideration might change the Council's decision as to what tower height it would allow. The City Council's decision to limit the tower to eight stories resulted from a balancing of the restrictive height limitations of the multi–family policies, and perhaps other policies, with the lenient limitations of the zoning code. That balancing process could easily yield different results without consideration of the multi–family policies. The City Council has discretion in deciding SEPA issues. *Cook v. Clallam Cy.,* 27 Wn. App. 410, 413, 618 P.2d 1030 (1980), *review denied,* 96 Wn.2d 1008 (1981). Accordingly, it is better for us to allow the City Council to exercise its discretion in deciding this height issue, without regard to the multi–family policies, rather than for us to guess what that decision might be.

We remand this case to the City Council for further consideration consistent with this opinion.

COLE and McCUTCHEON, JJ. Pro Tem., concur.