[No. 30540-9-I.    Division One.    April 26, 1993.]

ERICKSON & ASSOCIATES, INC., ET AL, *Appellants,* v.
DENNIS J. MCLERRAN, ET AL,
*Respondents.*

*David H. Karlen* and *Oles, Morrison & Rinker,* for appellants.

*Mark H. Sidran, City Attorney,* and *Robert Tobin, Assistant,* for respondents.

PEKELIS, A.C.J. — Erickson & Associates, Inc., and Ron Danz (Erickson) appeal from the summary judgment dismissal of their action to require the City of Seattle (City) to issue a Master Use Permit (MUP) for their proposed commercial and residential building. The City declined to issue the permit on the basis that the development plans for the site did not conform to the subsequently enacted Critical Areas Ordinance, Seattle Municipal Code (SMC) ch. 25.09. Erickson

contends that its right to the MUP had vested before the ordinance was enacted. We affirm.

I

On July 5, 1990, Erickson submitted a MUP application to the Department of Construction and Land Use (DCLU). The proposed project consisted of approximately 30 residential units, 4,500 square feet of commercial space, and 43 parking stalls.

Approximately 3 months later, in October, the Seattle City Council passed an interim Critical Areas Ordinance, SMC ch. 25.09. The ordinance was designed to avoid problems associated with development on steep slopes and within other sensitive areas such as wetlands. During the review of Erickson's MUP application, DCLU determined that the new ordinance applied to the proposed development because part of the project was located on slopes which were steep enough to qualify as a "critical area".

On November 29, DCLU sent a land use correction sheet to Erickson requiring that the project be revised to comply with the Critical Areas Ordinance. As proposed, Erickson's project covered nearly 80 percent of the property with impervious surfaces, such as roofs, driveways, and parking lots. DCLU required Erickson to conform to a development standard in the ordinance that allowed no more than 40 percent of the site to be covered with impervious surface. Former SMC 25.09.060(B)(7).[1] Alternatively, DCLU advised Erickson to seek a reasonable use exception under former SMC 25.09.100.[2]

---

[1] Former SMC 25.09.060(B)(7) provides in part:
"B. Development Standards. Specific development standards shall include, but are not limited to the following:
". . . .
"7. Impervious surfaces shall only be located within the site's developmental coverage and construction activity areas and shall be limited to a maximum of 40% of the lot area."

[2] Former SMC 25.09.100 provides in part:
"A. The director shall modify the requirements of Section 25.09.060 in specific cases when necessary to allow reasonable use of an applicant's property. To qualify for such relief the applicant must demonstrate the following:

Erickson responded by filing a petition for a writ of certiorari to challenge the application of the Critical Areas Ordinance to the project. Erickson claimed that its right to a MUP had vested before the Critical Areas Ordinance was enacted, arguing that, like the rule regarding building permits, the MUP application vested on the date it was filed. The trial court, however, quashed the writ of review because Erickson did not first seek a reasonable use exception. Subsequently, Erickson applied for a reasonable use exception which DCLU denied.

Having exhausted its administrative remedies, Erickson moved for partial summary judgment on the vested rights issue. After a hearing on the matter, the trial court denied Erickson's summary judgment motion.

## II

The sole issue before us on appeal is whether Washington's vested rights doctrine applies to the filing of a completed MUP application as it does to the filing of a building permit application.

With respect to the latter, it is well settled that developers who file a building permit application obtain a vested right to have their application processed according to the zoning and building ordinances in effect at the time of filing. *West Main Assocs. v. Bellevue*, 106 Wn.2d 47, 50-52, 720 P.2d 782 (1986); *Hull v. Hunt*, 53 Wn.2d 125, 130, 331 P.2d 856 (1958); *State ex rel. Ogden v. Bellevue*, 45 Wn.2d 492, 496, 275 P.2d 899 (1954). The building permit application must (1) be sufficiently complete, (2) comply with existing zoning ordinances and building codes, and (3) be filed during the effective period of the zoning ordinances under which the developer seeks to develop. *Valley View Indus. Park v. Redmond*, 107 Wn.2d 621, 628, 733 P.2d 182 (1987).

"1. That no other reasonable use can be made of the property that will have a lesser adverse impact on the critical area and adjoining and neighboring lands; and

"2. That the proposed use does not pose a threat to the public health, safety or welfare."

The purpose of the vesting doctrine is to allow developers to determine the rules that will govern their land development. *West Main Assocs. v. Bellevue*, 106 Wn.2d at 50. By focusing on the date that a complete building permit is filed, the doctrine provides certainty and is practical to administer. *Hull v. Hunt*, 53 Wn.2d at 130. Moreover, the substantial expense incurred in securing building permits justifies a presumption that developers will not speculate in the enhanced values of land for which building permits have been hurriedly obtained prior to a zoning change. *Hull v. Hunt*, 53 Wn.2d at 130.

Here, the City has adopted an ordinance which establishes a vesting scheme for building permit and MUP applications. SMC 23.76.026 provides in relevant part:

> A. Master Use Permit Components Other Than Subdivisions and Short Subdivisions. Applications for all Master Use Permit components except subdivisions and short subdivisions shall be considered under the Land Use Code and other land use control ordinances in effect on the date a fully complete building permit application, meeting the requirements of Section 302 of the Seattle Building Code, is filed. Until a complete building permit application is filed, [MUP] applications shall be reviewed subject to any zoning or other land use control ordinances that become effective prior to the date that notice of the Director's decision on the application is published, if the decision can be appealed to the Hearing Examiner, or prior to the date of the Director's decision if no Hearing Examiner appeal is available.

(Footnote omitted.)

On its face, SMC 23.76.026 complies with the minimum requirements set forth by our Supreme Court. Under the ordinance, the filing of a building permit application vests the developer's project under the existing land use and construction ordinances.[3] SMC 23.76.026. In addition, the ordi-

---

[3]SMC 23.76.026 also complies with RCW 19.27.095, which codified the common law vesting rule and provides in part:

"(1) A valid and fully complete building permit application for a structure, that is permitted under the zoning or other land use control ordinances in effect on the date of the application shall be considered under the building permit ordinance in effect at the time of application, and the zoning or other land use control ordinances in effect on the date of application."

nance exceeds the court's minimum requirements by creating a means by which a development can vest for "zoning or other land use" purposes *before* the filing of a building permit. This is achieved upon *approval* of the developer's MUP application. SMC 23.76.026.

Erickson contends, however, that by opting to permit early use vesting under the MUP situation, the City was obliged to comply with the procedures applicable to vesting in the building permit context. Thus, in Erickson's view, the mere *filing* of a MUP application is sufficient to vest a project under the existing land use ordinances.

Erickson supports its contention by citing *Victoria Tower Partnership v. Seattle*, 49 Wn. App. 755, 745 P.2d 1328 (1987) and *Beach v. Board of Adj.*, 73 Wn.2d 343, 438 P.2d 617 (1968). These cases are distinguishable. Although *Victoria Tower Partnership* applied the vesting doctrine in the context of a MUP application, the court did not address the question of whether the vesting rule for building permits should be extended to MUP's. The court apparently assumed that the two types of permits were equivalent. The focus of the opinion was on whether subsequently enacted *SEPA* (State Environmental Policy Act of 1971) policies qualified as zoning and building ordinances, and thus fell within the vested rights doctrine. *Victoria Tower Partnership*, 49 Wn. App. at 761. We can only conclude from the court's analysis that the distinction between a MUP and a building permit was not before the court.[4] Therefore, *Victoria Tower Partnership* is neither controlling nor particularly instructive on the issue presented here.

*Beach*, too, is inapposite. There, the court held that a verbatim record of administrative proceedings was necessary to enable judicial review under a writ of review. Because no such record existed, the case was remanded for a new hearing on the developer's conditional use permit application.

---

[4] We find additional support for this conclusion in the fact that the City's vesting ordinance, SMC 23.76.026, was not adopted until 1985, approximately 5 years after the appellant's MUP application in *Victoria Tower Partnership* was filed.

The court then noted, in dicta and without analysis, that subsequent zoning changes did not affect the developer's project. *Beach*, 73 Wn.2d at 347. At no time did the court consider whether a municipality could establish a MUP system like the one existing here or whether a vesting ordinance like SMC 23.76.026 complied with Washington's vesting rule.

Erickson next contends that we should extend the vesting rule governing building permits to MUP's because this would comport with the rule's twin aims of protecting development rights and preventing permit speculation. This argument is unpersuasive. First, we do not accept Erickson's premise that a vesting scheme such as that created in SMC 23.76.026 unduly impedes development rights. This is not a situation, for example, where local government has attempted to circumvent the vesting doctrine by forbidding the developer from filing a building permit until other permits are obtained. *See West Main Assocs. v. Bellevue*, 106 Wn.2d 47, 720 P.2d 782 (1986) (city ordinance preventing developers from vesting until after a series of permits were obtained ruled unconstitutional). On the contrary, the ordinance here *allows* the developer to file for a building permit, thereby vesting rights, at any time during MUP review. Erickson's decision not to do so here was based solely on the exercise of its own business judgment.

Furthermore, Erickson fails to persuade us that the costs incurred in filing a MUP are just as substantial as a building permit. Although MUP review, with its attendant environmental review and public hearing requirements, can be costly, it is clearly less costly than having to prepare applications for both MUP and building permit review. The very purpose behind the early vesting rule of SMC 23.76.026 was, presumably, to allow developers the certainty of an approved use before requiring them to incur the additional expense of preparing a building permit application. We see no good policy reasons to prevent local governments from providing this alternative to developers.

Finally, we note that the Supreme Court has been unwilling to extend the vested rights doctrine to the area of pre-

liminary site plan review, a form of regulatory review analogous to the MUP process. *See Valley View Indus. Park v. Redmond*, 107 Wn.2d 621, 639, 733 P.2d 182 (1987). Thus, not only is there no case authority supporting Erickson's claim that MUP and building permit applications are equivalent, established precedent clearly suggests otherwise.

For these reasons, we hold that in adopting SMC 23.76-.026, the City was entitled to set the date for the early vesting of a MUP application at the time the developer's application was approved, rather than filed. Because the Critical Areas Ordinance became effective before Erickson's MUP application was approved, and Erickson did not seek a building permit, the proposed development was not vested. We therefore affirm the denial of Erickson's summary judgment motion.[5]

SCHOLFIELD and COLEMAN, JJ., concur.

Review granted at 122 Wn.2d 1016 (1993).

---

[5]Our analysis does not depend on the affidavits offered by the City and objected to by Erickson. Hence, we need not address the issue of their admissibility.