86 P.3d 1169 (2004)
WCHS, INC., a California corporation, John Doe, an individual, and Jane Doe, an individual, Respondents,
v.
CITY OF LYNNWOOD, a Washington municipal corporation, Appellant,
City of Lynnwood Mayor Mike, McKinnon, an Individual; City Council Member Don Gouch, an individual; City Council Member Ted Hikel, an individual; City Council Member Martin Nelson, an individual; City Council Member Ruth Ross, an individual; City Council Member Loren Simmonds, an individual; City Council Member Jim Smith, an individual; City Council Member Lisa Utter, an individual, Defendants.
No. 52405-4-I.
Court of Appeals of Washington, Division 1.
March 1, 2004.
Publication Ordered March 26, 2004.
*1170 Greg Alan Rubstello, Seattle, WA, for Appellant.
John E. Keegan, Traci Lyn Shallbetter, Davis Wright Tremaine LLP, Seattle, WA, for Respondents.
GROSSE, J.
Proponents of projects are entitled to have their proposals processed under the regulations in effect at the time a complete building permit application is filed, regardless of subsequent changes in the zoning or other land use regulations. WCHS's application for a building permit was complete at the time of filing in early November 2002. The decision of the trial court that this allowed WCHS to proceed with its project is affirmed.

FACTS
WCHS cares for persons with chemical dependencies by providing opiate substitution treatment services. The State recognizes these treatment centers as "essential public facilities."[1] In early June 2002, WCHS submitted an application to the Department of Social and Health Services Division of Alcohol and Substance Abuse (DASA) for certification of such a center in Snohomish County. In response DASA initiated a process to determine if there was a public need. This process included public hearings. DASA concluded that Snohomish County needed at least three of these facilities.
At that point, WCHS began a search for a site. It located space in the Alderwood Professional Building, a building located across from Alderwood Mall, where medical uses were already permitted outright under the Lynnwood Municipal Code (LMC). Lynnwood's planning manager was contacted regarding the proposed use in this building. The manager informed WCHS's agent that the proposed center was a medical use and thus a permitted use under the applicable zoning regulations. Relying on this representation, WCHS entered into a lease agreement with building representatives.
On November 8, 2002, WCHS submitted a building permit application to the City. WCHS needed to remodel to meet the requirements for state certification. The application contained all of the information required under RCW 19.27.095 (Building permit application-Consideration-Requirements) and LMC 16.04.070-.071 (Containing *1171 § 106.3 UBC amended-Contents of building permit and fully complete building permit application defined).[2]
On November 7, 2002, the City prepared notice of an emergency city council meeting for November 8, 2002, less than 24 hours before the call of the meeting. The notice does not give a time when it was issued or how it was disseminated to the public.
A proposed ordinance[3] providing interim zoning and land use regulations related to opiate substitution treatment providers was presented at the meeting. The ordinance treats such clinics differently than other medical facilities and precludes the siting of such a center within 250 feet of residential property, public parks, child care facilities, youth organizations, and public or private schools, colleges or universities. There is no dispute that the ordinance prevents WCHS from locating the treatment center in the Alderwood Professional Building. The Council passed the ordinance on November 12, 2002. There is also no dispute that, if the WCHS building permit application was complete when it was filed on November 8, 2002, the emergency ordinance does not apply to it. If, however, the new ordinance is applicable, it precludes use of the Alderwood Professional Building for the proposed use.
On November 19, 2002, WCHS applied for a business license authorizing the operation of the treatment program in the city. The requirements for a business license are set forth in the municipal code, LMC 5.04. The code confers no discretion on the City with respect to approval or issuance. Nevertheless, the city attorney determined that the business license should be denied under the requirements of RCW 35A.82.020[4] and RCW 35A.96A.410 [sic].[5]
Initial approval of the building permit was stamped on the plans at least as early as November 25, 2002.[6] But on December 4, 2002, the city attorney advised City departments to treat WCHS' application as incomplete and refuse to process it further. The City claimed that the application could not be considered complete until after WCHS received DASA certification. Additionally, the city attorney suggested that the City assert that a business license is of a higher priority than a building permit under LMC 2.76. Thus, as the business license could not be issued until after certification, then the building permit cannot be issued either, as least until the business license first issued.[7]
On December 5, 2002, the City sent a letter to WCHS stating that the application for a business license was denied because RCW 35A.82.020 prohibited the City from licensing any business activity that has not first complied with the laws of the State (certification).[8] Despite being told that WCHS was in compliance, the City would not change its stand and stopped processing the application. However, the letter fails to give notice to the applicant of its right to a hearing as is mandated by LMC 5.25.100.
Because the City claimed the application was incomplete and halted process on the application for the building permit, WCHS *1172 determined that the City was not going to render a final appealable decision and therefore filed a Summons and a Complaint for Declaratory Judgment, Writ of Mandamus and Award of Damages. (CP 528-557). WCHS moved for partial summary judgment seeking declaratory judgments that its building permit application was complete on November 8, 2002, that WCHS had a vested right to have its building permit application processed under the laws in effect on November 8, 2002, and that by writ of mandamus the City must process the building permit. WCHS also sought the court's determination that possession of a business license by WCHS is not a requirement of having a completed building permit application, and that certification of WCHS by DASA is not a requirement for application completion or issuance of a business license. Further, WCHS sought by writ of mandamus that the City issue a business license to it.
On May 5, 2003, over strenuous argument by the City, the trial court held that WCHS's certification by DASA is not a prerequisite for obtaining a local business license or a building permit. The court also held that the building permit to make tenant improvements was complete and suitable for processing at the time of filing on November 8, 2002. The court found the City inappropriately treated WCHS's building permit application as incomplete so the City could make the proposed use subject to ordinance adopted on November 12, 2002. Further, the trial court determined that the City did not have the authority to decide whether DSHS adopted regulations in accordance with State law. By writ of mandamus, the trial court ordered the City to process the applications for the building permit and the business license and render final decisions thereon in accordance with the court's holdings by May 23, 2003.

DECISION
Washington's doctrine of vested rights entitles proponents of projects, usually developers, to have their proposals processed under the regulations in effect at the time a complete building permit application is filed, regardless of subsequent changes in the zoning or other land use regulations.[9] A review of the record shows that WCHS's application for a building permit was complete when filed. The criteria for a complete building permit application are set forth in State and local law and WCHS fully complied. The application contained all of the information required under RCW 19.27.095[10] and LMC 16.04.070-.071.[11] As a matter of law, the criteria must be plainly stated and can leave no room for arbitrary and discretionary interpretation.[12]
The City contends that paragraph 7 § 106.3.1 of the Uniform Building Code, incorporated into LMC 16.04.071, allows the City to require state certification as an element of a complete application. But nowhere in the state or local criteria of a complete building permit application does it list DSHS/DASA certification of the treatment facility as a prerequisite. The City makes an absurd argument that WCHS has to obtain state certification before applying for a building permit. To give this argument weight the City would also have to argue the same for the owner/operators of other state-certified businesses such as daycare facilities, hospitals, pharmacies or beauty salons. In fact, as indicated in the record, DSHS cannot certify an opiate substitution treatment facility until it has seen the completed facility. To the extent that state law authorizes a building official to require other data and *1173 information, as a matter of due process such information must be reasonably set forth in the local ordinance governing the requirements for a complete application to avoid being unduly vague.[13] Vesting procedures that are vague and discretionary cannot be used to deny an applicant vested rights.[14] The actual requirements for a fully complete application cannot be vague and discretionary.
The purpose of the building code is to ensure that applicable standards and requirements are met in the construction of buildings or improvements. The purpose of a "complete application" requirement is to allow the local jurisdiction to determine what the developer has applied for and what rights have accrued in order to evaluate whether the proposed improvements will be properly constructed. Here, the City of Lynnwood does not need to have certification in hand to be able to determine whether the proposed improvements conform to building standards.
The City also argues that a building permit application is not complete for vesting purposes until the applicant first obtains a business license. This argument is equally ridiculous. The City claims its municipal code prioritizes permits and licenses, and a permit or license listed lower on the list cannot issue before one above it is granted. However, the higher priority argues here is that of a "Business licenseOut of city." The treatment center will be in the city.
Again, nowhere in state or local laws listing the requirements for a complete application for a building permit is there a requirement for prior possession of a business license. Even the City's own planning manager indicated that an applicant for a land use permit rarely applies for a business license until the building permits have been approved.
Even if we were to accept the hierarchy of the City's priority list, LMC 2.76 only sets forth the order of permit issuance. The issuance of a business license has nothing to do with the completeness of an application for a building permit. The code section does not state that issuance of a business license is a prerequisite to a complete building application, only that when the permits are issued, the business license must issue before the building permit. But, as stated above, the "out of city" business license is the lower on the priority list; this business would be "in city."
As noted in West Main, a city cannot deny a developer the ability to vest rights until after a series of permits is obtained. Any such ordinance or application procedure is unduly oppressive upon individuals. Any such pre-application procedure established by the City is vague and discretionary.[15] The City's reasons for claiming that the building permit was incomplete are not supported and the decision of the trial court is correct.
The City also claims that a Lynnwood building official has discretion to determine the requirements of a complete application, and determine whether those requirements have been satisfied. But it has long been held that the discretion permissible in zoning matters is that exercised in adopting the zone classifications with the terms, standards and pertinent requirements, which must be applicable to all persons alike. The acts of administering a zoning ordinance do not go back to the questions of policy and discretion, which were settled at the time of the adoption of the ordinance.[16] A decision to grant or deny a building permit is ministerial, not discretionary. Any "anonymous procedures" that can be applied in an uncertain or discretionary *1174 fashion would be a violation of an applicant's rights.[17] So, once complete, the processing and issuance of a building permit is a ministerial act and involves no discretion. The requirement of a "complete application" is limited and is designed to avoid exactly what the City attempted to do here, change its land use ordinances in response to a particular application.[18] The City cannot do this, and the trial court did not err.
The City also contends the trial court erred in determining that the City was wrong to claim it could not process a business license application because WCHS had not obtained certification from DSHS/DASA. The City argues the business license application was incomplete and could not be approved because WCHS had not previously obtained certification for the opiate substitute treatment center. The City asserts that the failure to obtain certification prior to applying for a business license is tantamount to failure to comply with the general laws of the State. And, of course, the City also claims that it could not issue the building permit until the business license was issued. If this argument were accepted, the City would have created its own "Catch-22," a necessarily arbitrary circumstance.
LMC 5.04.020 makes it illegal for a person or corporation to conduct business or engage in an occupation without obtaining a business license. LMC 5.04.030 sets forth the requirements for a business license application. Nothing in that section requires WCHS to have received its certification from DSHS/ DASA before applying or indicates that a lack of certification can be the basis for a denial.
Under chapter 70.96A RCW, there is no doubt that DSHS/DASA certification is a prerequisite to the actual distribution of opiate substitutes and receiving public funds. A business that proposes to provide such treatment, but has not yet been granted certification, is not in violation of RCW 70.96A or regulations thereunder if the business applies for and is in the process of obtaining permits from the local government for that purpose.[19]
In fact, based on WAC 388-805-015 and other related provisions, it is difficult to conceive how WCHS could have received certification before obtaining the local permits. The application for State certification must set forth the location and the premises plan. It cannot provide this until the plan has been approved and a building permit issued. Further, RCW 70.96A.410(b) requires DSHS/ DASA to certify only programs that are sited in accordance with appropriate land use ordinances. DSHS cannot know what land use laws govern until the applicant has submitted a "complete" application, thereby vesting its rights in the governing laws/ordinances.
Next, the City claims its letters of December 5 and 6, 2002, were final orders that should have been administratively appealed or subject to LUPA appeals. A review of the letters indicates otherwise, and supports the decision of the trial court.
No exhaustion of administrative remedies requirement arises without issuance of a final, appealable order.[20] An agency's letter does not constitute a final order unless the letter clearly fixes a legal relationship as a consummation of the administrative process.[21] The letter must be clearly understandable as a final determination of rights, and doubts as to the finality of such communications must be resolved in favor of the citizen.
The City's December 6, 2002 letter regarding the building permit application does not constitute a final appealable decision. The letter does not use the word decision, final or appealable. In fact, the letter indicates that the application is "incomplete" but would remain open for 180 days. But the letter did not comply with the City's own code, LMC *1175 1.35.040. The letter was sent by standard mail to the architect for WCHS, with no copy to WCHS, and was not sent in accordance with other requirements for distributing notice of decisions.[22]
The City's December 5, 2002 letter regarding denial of the business license also does not constitute a final appealable decision. LMC 5.26.100 provides that when the City's finance director refuses to grant a license, he or she must notify the applicant in writing and inform the applicant of the right to a hearing before the police chief within 10 days of the date of the notice. Further, the letter did not state or suggest that the letter regarding the need for DSHS/DASA certification prior to the issuance of a business license constituted a final agency decision. Additionally, the City later wrote WCHS that the WCHS business license application had not been "denied," but only deemed incomplete. Because of the unclear, inconsistent, and non-complying nature of these letters, they were insufficient to constitute final orders. No exhaustion of administrative remedies arose.
Finally, the Land Use Petition Act (LUPA), Chapter 36.70C RCW, provides the exclusive means for review of land use decisions. LUPA defines a "land use decision" as a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals.[23] But the dispute here is not about a "final" decision. It is about an interim decision made in the process of, but prior to, reaching a final decision on a permit. LUPA does not apply to interlocutory decisions.[24]
The decision of the trial court is affirmed.
COLEMAN and SCHINDLER, JJ., concur.
NOTES
[1] See RCW 70.96.400-.410; WAC 388-805.
[2] Contrary to the City's argument, there is no specific requirement in these provisions that state certification or possession of a city business license is required to complete an application. The City uses the "catch-all" provision to "provide other information" found in LMC 16.04.070 as the reason the application was incomplete.
[3] Ordinance 2429.
[4] Excise tax section authorizing excises for regulation of licenses and permits.
[5] It is presumed that the city attorney meant to reference RCW 70.96A.410 (Department Certification and Definition of opiate substitution treatment).
[6] Exhibit A to WCHS's brief.
[7] As noted above, the requirements for complete building permit applications are contained within RCW 19.27.095 and LMC 16.04.070-.071. A review of those sections indicates that certification by DSHS/DASA, or the possession of a business license is not a prerequisite to determining whether a building permit application is complete.
[8] On January 2, 2003, Kenneth Stark, Director of DASA, provided written notice to the City that WCHS was in compliance with State law pertaining to opiate substitution treatment services on November 8, 2002, and had been in compliance at all times thereafter. Under State rules, WCHS is only required to be certified prior to the actual dispensing of opiate substitutes. (CP 431-34, 472-73).
[9] Erickson & Assocs., Inc. v. McLerran, 123 Wash.2d 864, 867-68, 872 P.2d 1090 (1994), citing West Main Assocs. v. City of Bellevue, 106 Wash.2d 47, 720 P.2d 782 (1986). See RCW 19.27.095(1).
[10] Building Permit Application-Consideration-Requirements. permit application defined, as well as §§ 1.35.010 and 1.365.015 of the LMC.
[11] Containing § 106.3 UBC amended-Contents of building permit and fully complete building
[12] See Pinecrest Homeowners Ass'n v. Glen A. Cloninger & Assocs., 115 Wash.App. 611, 624, 62 P.3d 938, review granted, 150 Wash.2d 1001, 77 P.3d 650 (2003) (requirement that proposals demonstrate compliance with comprehensive plan unduly vague and enabled arbitrary and discretionary enforcement of the law).
[13] Friends of the Law v. King Cy., 123 Wash.2d 518, 525, 869 P.2d 1056 (1994).
[14] West Main, 106 Wash.2d at 53, 720 P.2d 782. See also Adams v. Thurston Cy., 70 Wash.App. 471, 855 P.2d 284 (1993).
[15] West Main, 106 Wash.2d at 52-53, 720 P.2d 782. In West Main, the City of Bellevue adopted an ordinance defining the elements for a complete building permit application that required the applicant to obtain conditional use permits, get site plan approval, and a series of other actions before it could vest its rights by filing a building permit application. The court invalidated the ordinance because it improperly established several hurdles for West Main to clear before it could vest its rights.
[16] State ex rel. Ogden v. City of Bellevue, 45 Wash.2d 492, 495, 275 P.2d 899 (1954).
[17] See Friends of the Law, 123 Wash.2d at 525, 869 P.2d 1056.
[18] See West Main, 106 Wash.2d at 53, 720 P.2d 782.
[19] Declaration of Kenneth Stark, director of the DASA division of DSHS.
[20] Valley View Indus. Park v. City of Redmond, 107 Wash.2d 621, 634, 733 P.2d 182 (1987), citing RCW 34.04.130; Bock v. Board of Pilotage Comm'rs, 91 Wash.2d 94, 99, 586 P.2d 1173 (1978).
[21] Valley View, 107 Wash.2d at 634, 733 P.2d 182.
[22] See LMC 1.35.035, which, among other things, includes who gets notification, a requirement that the statement includes that the applicant may appeal, the time limits for the appeal and the process for making an appeal.
[23] RCW 36.70C.020(1).
[24] Pacific Rock Environmental Enhancement Group v. Clark Cy., 92 Wash.App. 777, 781-82, 964 P.2d 1211 (1998).