[No. 24259-1-II.    Division Two.    March 3, 2000.]
WESTSIDE BUSINESS PARK, L.L.C., *Respondent*, v. PIERCE COUNTY, *Appellant*.

*Thomas Ross Bjorgen* of *Bjorgen Bauer, P.L.L.C.*, for appellant.

*Terry Lynn Brink* and *Salvador Alejo Mungia* of *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim*, for respondent.

*John Maurice Groen* on behalf of Pacific Legal Foundation, amicus curiae.

*Stephen Harold G. Overstreet* on behalf of Building Industry Association of Washington, amicus curiae.

BRIDGEWATER, C.J. — Pierce County appeals the superior court's affirmance of a hearing examiner's decision that Westside Business Park's (Westside) completed short plat application, which did not reveal the proposed use, vested under the water drainage ordinances in effect when the application was filed. Because the County knew of the intended use and accepted the application as complete, we hold that vesting occurred. We affirm.

The material facts in this case are undisputed. On September 11, 1997, Westside met with Pierce County Planning and Land Services for a predevelopment conference. In this meeting, Westside told the County that it planned a two-lot commercial short plat with an office building and parking on one lot and four mini storage buildings and a small office on the other lot. Westside's preliminary site plan also showed storm drainage facilities. Westside filed its completed application for short plat approval on September 16, 1997, but this application showed only two vacant lots with no structural improvements, storm drainage facilities, roads or utilities.

The Pierce County Council adopted new storm drainage requirements through an ordinance that became effective on November 3, 1997. This new ordinance "significantly increased storm drainage requirements," in part as a response to the federal Clean Water Act.

Concerned about the impact of the new storm water drainage requirements on its development, Westside sought an advisory opinion from the County on whether its development would be considered under the old or the new ordinance. The County advised Westside that because the completed short plat application did not include an "engineering analysis for storm drainage design," the development had not vested with regard to storm drainage regulations, and therefore the new ordinance would be ap-

plied to Westside's development.[1] This decision was made final by administrative determination on January 19, 1998.

Westside appealed the County's ruling and an administrative hearing examiner reversed, finding that Westside's "bare bones". completed application for short plat had vested its right to have the development be considered according to the storm water drainage ordinance in effect at the time the application was filed. The superior court affirmed.

■ The only issue in this case is whether the land use vesting statute, RCW 58.17.033, vests a developer's right to have the storm water drainage ordinance in effect at the time of its "bare bones" application for short plat approval. The Land Use Petition Act (LUPA) provides a statutory standard for review of land use petitions. Under RCW 36.70C.130, an appellate court may grant relief from a land use decision if the petitioner carries its burden in establishing one of six standards of relief:

> (a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;

> (b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

> (c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

> (d) The land use decision is a clearly erroneous application of the law to the facts;

> (e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or

> (f) The land use decision violates the constitutional rights of the party seeking relief.

"[A]n appellate court applies these standards in reviewing

---

[1]Under County ordinances, storm drainage analysis was not required in short plat applications.

a decision based upon the record created before the hearing examiner." *Weyerhaeuser v. Pierce County*, 95 Wn. App. 883, 889, 976 P.2d 1279, *review granted*, 139 Wn.2d 1001 (1999); RCW 36.70C.120(1); 36.70C.130(1).

In this case, the County has argued that the Hearing Examiner's decision is a misapplication of the law in that the vesting doctrine does not apply to these facts. RCW 58.17.033, provides:

> (1) A proposed division of land, as defined in RCW 58.17.020, shall be considered under the subdivision or short subdivision ordinance, and zoning or other land use control ordinances, in effect on the land at the time a fully completed application for preliminary plat approval of the subdivision, or short plat approval of the short subdivision, has been submitted to the appropriate county, city, or town official.
>
> (2) The requirements for a fully completed application shall be defined by local ordinance.

" '[V]esting' refers generally to the notion that a land use application, under the proper conditions, will be considered only under the land use statutes and ordinances in effect at the time of the application's submission." *Noble Manor Co. v. Pierce County*, 133 Wn.2d 269, 275, 943 P.2d 1378 (1997).

The County argues that Westside's application did not list any use and therefore could not vest with regard to any particular use.[2] The Hearing Examiner characterized Westside's application as a "bare bones" application in that it showed only two vacant lots with no structural improvements, no storm drainage facilities, no roads, and no utilities. It is only by looking to other communications between Westside and the County (the predevelopment conference) that we can discover that Westside's proposed use was a two lot commercial short plat with an office building and parking on one lot and four mini storage buildings and a small office on the other lot.

---

[2]Westside has urged this court to decline to review this issue because the County did not raise it below. But the County did raise this issue before the hearing examiner and therefore the issue was properly preserved.

The County relies upon *Noble Manor*'s discussion limiting the development rights that vest. It argues that storm drainage regulations do not vest with the application for subdivision because the application does not include a storm drainage plan. *Noble Manor* held that "what is vested is what is sought in the application for a short plat." *Noble Manor*, 133 Wn.2d at 284. The Court went on to explain:

Not all conceivable uses allowed by the laws in effect at the time of a short plat application are vested development rights of the applicant. However, when a developer makes an application for a specific use, then the applicant has a right to have that application considered under the zoning and land use laws existing at the time the completed plat application is submitted.

If a landowner requests only a division of land without any specified use revealed, then the county, city or town may consider the application to see if any legal use can be made of the land so divided, and no particular development rights would vest at that time. However, when an application is made for division of land for a specified use, then the applicant has the right to have that application for that use considered under the land use laws in effect on the date of the application.

*Noble Manor*, 133 Wn.2d at 285.

The County made the same argument in *Noble Manor* that it does here—that the developer was not required to disclose its intended use in the short plat application, and therefore, the rights had not vested with regard to any particular use. *Noble Manor*, 133 Wn.2d at 284. The Court noted that the developer had done all that the County had required of it. The County simply had not required more information on its application, just as it did not here. But the Court noted the conflicting stands of the County as to whether the developer had revealed his use and rejected that argument by pointing to all of the communications between the developer and the county. The Court concluded

that the developer "did clearly communicate its intended use to the County."[3] *Noble Manor,* 133 Wn.2d at 285.

In this factual situation, the County argues, the language of the *Noble Manor* decision might be read to indicate that the developer did not vest with regard to any particular use. Unlike *Noble Manor,* Westside did not reveal in its application what type of use would be made of the land, and the environmental checklist and inspector's report refer only to a commercial use. However, like *Noble Manor,* there does not appear to be any real doubt here that the County actually knew what was planned in the development (from the predevelopment conference) and the County did not actually require Westside to reveal its proposed use in its application. Under RCW 58.17.033(2), the County has the duty to define by local ordinance the requirements for a fully completed application for a subdivision or a short subdivision of land. Westside completed the County's application form and provided all the information required of it. Therefore, Westside did "reveal" its intended use in the way the particular process of the County allowed and therefore it was vested with regard to that use. The parties should be able to rely upon the application. But where the County invites vague information in the application and declares it to be complete, the only resort may be to other communications. However, if the application had called for this information or if the County had taken the stance that it was unaware of the proposed use, our decision might differ.

The County also argues that storm water drainage regulations can never vest with a subdivision application. It argues that storm water drainage ordinances may vest only with a site development permit when the facilities are

---

[3]The Court considered the following: (1) the short plat application indicates that the proposed subdivision was for three multifamily residential lots; (2) the environmental checklist required by the county indicates that the parcel would be subdivided into three duplex sites; (3) county employees completing the review process communicated that they understood that the use would be three duplex sites. *Noble Manor,* 133 Wn.2d at 284-85.

evaluated.[4] There is no legal support for this proposition. The County cites *Ford v. Bellingham-Whatcom County District Board of Health*, 16 Wn. App. 709, 558 P.2d 821 (1977). But the County mischaracterizes the holding in *Ford* when it says that *Ford* held that "neither a subdivision application nor approval vests for septic regulations." In *Ford*, the appellants had not filed a subdivision application. The appellants in *Ford* were the homeowners in a housing development who argued that their rights vested at the time that the developer filed its short plat application, or, alternatively, when the owners purchased their lots. *Ford*, 16 Wn. App. at 714. Understandably, the court held that the owner's rights would not vest until they actually applied for a permit: "where a property owner has a right to obtain a septic tank permit under existing septic tank regulations, to the extent that such a right can vest, it does not do so until the owner actually makes a valid application for a septic tank permit." *Ford*, 16 Wn. App. at 715. The other cases cited by the County only reiterate the general vesting rule and are not helpful. *See Juanita Bay Valley Community Ass'n v. City of Kirkland*, 9 Wn. App. 59, 83, 510 P.2d 1140, *review denied*, 83 Wn.2d 1001 (1973) (where a developer applied for a grading permit prior to a change in the grading regulations, the developer was vested under the prior law); *Talbot v. Gray*, 11 Wn. App. 807, 811, 525 P.2d 801 (1974) (the developer's rights vested upon filing an application for a substantial development permit and they were therefore exempt from the later enacted Shorelines Management Act), *review denied*, 85 Wn.2d 1001 (1975).

■ The County further argues that storm water drainage ordinances are not land use control ordinances because they are not zoning ordinances and do not regulate the "division of land, such as density and minimum lot size restrictions." RCW 58.17.033(1) applies the vesting rule to "zoning or other land use control ordinances." In *New*

---

[4]Drainage standards are not reviewed by the County until the site development permit process. *See* Pierce County Code 18C.10.050.

*Castle Investments v. City of LaCenter,* 98 Wn. App. 224, 989 P.2d 569, 572 (1999), this court was called upon to define "other land use control ordinances," and held that a land use control ordinance is an ordinance that exerts a "restraining or directing influence" over land use. We further noted that " '[t]he vested rights rule is generally limited to those laws which can loosely be considered "zoning" laws.' " *New Castle,* 98 Wn. App. at 232 (quoting WASHINGTON STATE BAR ASS'N, WASHINGTON REAL PROPERTY DESK BOOK, § 97.8(2)(d) (3d ed. 1996)). But it has also been extended beyond zoning-type laws. *See e.g. Juanita Bay,* 9 Wn. App. 59 (surface grading).

Storm water drainage ordinances are land use control ordinances. Under RCW 58.17.060, local governments may approve a short subdivision only if they enter written findings in support, as provided in RCW 58.17.110. RCW 58.17-.110(1) requires, as a prerequisite to subdivision approval written findings that "appropriate provisions are made for [inter alia] drainage ways[.]" As a mandatory prerequisite to short subdivision approval, storm water drainage ordinances do exert a "restraining or directing influence" over land use and are therefore land use control ordinances.

Furthermore, the Supreme Court has indicated that storm water drainage ordinances are subject to the vesting rule. In *Phillips v. King County,* 136 Wn.2d 946, 963, 968 P.2d 871 (1998), the Supreme Court held that the vested rights doctrine required the county to apply the surface water drainage regulations in effect at the time of the developer's application for preliminary plat approval. The County claims that this holding is dicta because the Court was concerned only with claims of inverse condemnation and trespass and addressed the vested rights doctrine simply to illustrate why a municipality should not be held liable for damages caused by a developer's design approved by the county. But, even if dicta, because the *Phillips* court plainly considered whether surface water drainage ordinances are within the ambit of the vested rights doctrine,

it is persuasive in this case. In light of *Phillips*, we are not prepared to say that storm water drainage ordinances are not subject to the vesting rule.

The County contends that *Rhod-A-Zalea & 35th, Inc. v. Snohomish County*, 136 Wn.2d 1, 959 P.2d 1024 (1998), requires the finding that the vested rights doctrine does not apply to regulations that do not affect use. But *Rhod-A-Zalea* is not a vested rights case; it involved a nonconforming use. The Court found that Rhod-A-Zalea's valid nonconforming use nonetheless did not exempt it from reasonably enacted police power regulations for the health, safety and welfare of the community. *Rhod-A-Zalea*, 136 Wn.2d at 9. *Rhod-A-Zalea* has no impact on this case. This case involves the statutory vesting doctrine. And, in this case, the County has abandoned any argument that the developer's vested rights were extinguished because the drainage ordinance was necessary for public health or safety.

■ The County has also argued that the vested rights doctrine does not preclude a change in storm drainage ordinances because under both the old and new regulations, Westside's proposed use is allowed. This issue was not raised below and is therefore not reviewable here.[5]

■ Finally, the County argues that the state vested rights doctrine is preempted by federal law because the county ordinance was enacted in order to bring the County into compliance with the federal Clean Water Act, 33 U.S.C. §§ 1251-1387. Federal law preempts state law where "to the extent that compliance with both laws is physically impossible, or state law would be an obstacle to the ac-

___

[5]Failure to raise issues during the course of an administrative hearing precludes the consideration of such issues on review. *Griffin v. Department of Soc. & Health Servs.*, 91 Wn.2d 616, 631, 590 P.2d 816 (1979); *see also Wahler v. Department of Soc. & Health Servs.*, 20 Wn. App. 571, 576, 582 P.2d 534 (1978) (reviewing court cannot pass upon issues not actually decided by the administrative agency). It is the decision of the Hearing Examiner, not the trial court, that is under review and therefore it is not sufficient to raise the issue at the superior court. *Maranatha Mining, Inc. v. Pierce County*, 59 Wn. App. 795, 799 n. 5, 801 P.2d 985 (1990); *Balser Invs., Inc. v. Snohomish County*, 59 Wn. App. 29, 36, 795 P.2d 753 (1990).

complishment of the full purposes and objectives of Congress." *Sayles Hydro Assocs. v. Maughan*, 985 F.2d 451, 455 (9th Cir. 1993). There is no evidence in this case that the state vested rights doctrine makes compliance with the federal act impossible, nor that it frustrates the purposes and objectives of Congress. Therefore, this issue, which was not raised before the hearing examiner, is not a manifest error affecting a constitutional right and will not be reviewed. *See* RAP 2.5.

There is no genuine dispute of the fact that the County did know what Westside's use would be. And Westside did complete the County's application, which did not ask it to reveal its intended use. Therefore, we hold that Westside did vest its intended use and affirm the hearing examiner's decision.

Affirmed.

HOUGHTON and ARMSTRONG, JJ., concur.

Review denied at 141 Wn.2d 1023 (2000).