**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

/FILE\

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE DEC 2 9 2016

_Fairhurst CJ._
for CHIEF JUSTICE

This opinion was filed for record

at 8:00am on Dec 29, 2016

_Susan L. Carlson_
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| SNOHOMISH COUNTY, KING COUNTY, and BUILDING INDUSTRY ASSOCIATION OF CLARK COUNTY,<br><br>Respondents,<br><br>v.<br><br>POLLUTION CONTROL HEARINGS BOARD, and WASHINGTON STATE DEPARTMENT OF ECOLOGY, and PUGET SOUNDKEEPER ALLIANCE, WASHINGTON ENVIRONMENTAL COUNCIL, and ROSEMERE NEIGHBORHOOD ASSOCIATION,<br><br>Petitioners. | NO. 92805-3<br><br><br>EN BANC<br><br><br><br>Filed ___DEC 2 9 2016___ |

STEPHENS, J.—This case asks us to decide whether Washington's vested

rights doctrine excuses compliance with the requirements of a municipal storm water

permit. The Washington State Department of Ecology issued the third iteration of a

municipal storm water permit pursuant to the Federal Water Pollution Control Act (also known as the Clean Water Act), 25 U.S.C. §§ 1251-1388, and the National Pollutant Discharge Elimination System permitting program established by the act. The permit requires the owners or operators of large and medium municipal separate storm sewer systems to adopt and make effective a local storm water management program by June 30, 2015. The program may include local ordinances and "shall apply to all [development] applications submitted after July 1, 2015 and shall apply to [development] projects approved prior [to] July 1, 2015, which have not started construction by June 30, 2020." Certified Record (CR) at 26-27. Various permittees appealed this portion of the permit to the Pollution Control Hearings Board, claiming that it violated the vested rights doctrine because it compelled them to retroactively apply new storm water regulations to completed development applications.

The Pollution Control Hearings Board held that the vested rights doctrine does not apply to storm water regulations permittees must implement as part of the National Pollutant Discharge Elimination System permitting program. The Court of Appeals reversed, finding that the vested rights doctrine excuses compliance with the storm water regulations because they are "land use control ordinances." *Snohomish County v. Pollution Control Hr'gs Bd.*, 192 Wn. App. 316, 323, 368 P.3d

-2-

194 (2016). We reverse the Court of Appeals and reinstate the Pollution Control Hearings Board's order.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

*Federal Clean Water Act and State Water Pollution Control Act*

The Clean Water Act's (CWA) purpose is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To achieve that purpose, the CWA prohibits the discharge of pollutants from a point source absent a National Pollutant Discharge Elimination System (NPDES) permit. *Id.* §§ 1311(a), 1342(a). Large and medium municipal separate storm sewer systems (MS4s) are "'point source[s]'" and therefore require an NPDES permit. *Id.* § 1362(14).

Congress authorized the Environmental Protection Agency (EPA) to delegate the NPDES permitting program to the States. *Id.* § 1342(b). The EPA delegated authority to the Washington State Department of Ecology to implement the NPDES permitting program in Washington. RCW 90.48.260(1). The legislature has recognized that Ecology has "[c]omplete authority to establish and administer" the program. *Id.* at (1)(a).

The permits Ecology issues must comply with the federal CWA standard and the state water pollution control act (WPCA), chapter 90.48 RCW, standard. 33 U.S.C. § 1342(p)(3)(B)(iii); CR at 3996-97. The federal standard provides that "[p]ermits for

discharges from municipal storm sewers . . . shall require controls to reduce the discharge of pollutants to the maximum extent practicable [(MEP)]." 33 U.S.C. § 1342(p)(3)(B)(iii). The state standard provides that Ecology "shall . . . incorporate permit conditions which require all known, available, and reasonable [treatment] methods to control toxicants [(AKART)]." RCW 90.48.520. Ecology issued the first iteration of the municipal storm water permits in 1995, and the second iteration in 2007. CR at 4057.

### *The 2013 Municipal Storm Water Permits*

In order to give context to the primary issue in this case, it is helpful to briefly review the history of the third iteration of the permits (2013 Permits), which include two phases ("2013 Phase I Permit" and "2013 Phase II Permit"). *Id.* at 10. The development of those permits was partly in response to a Pollution Control Hearings Board (Board) decision regarding the second iteration of the permits (2007 Permits). Several permittees appealed the 2007 Permits to the Board. The Board found that the 2007 Permits "failed to reduce pollutants to the federal [MEP] standard, and without greater reliance on [low impact development (LID)], did not represent [AKART]" under state law. *Id.* at 4058. The Board directed Ecology to modify the 2007 Permits accordingly. Ecology did not amend and reissue the 2007 Permits, but instead conducted studies to develop appropriate LID techniques for the next iteration of the

permits, i.e., the 2013 Permits. The legislature subsequently amended RCW 90.48.260, acknowledging the requirements and timelines for Ecology's implementation of LID techniques in the next iteration of the permits.

Ecology issued the third iteration of the permits on August 1, 2012. The 2013 Phase I Permit became effective on August 1, 2013 and is set to expire July 31, 2018. *Id.* at 12. That permit covers discharges from MS4s, including the cities of Tacoma and Seattle, as well as Snohomish, Clark, King, and Pierce Counties (collectively permittees). "Special Condition S5" requires permittees to implement a storm water management program. Condition S5(C)(5) requires the storm water management program to include minimum performance measures to prevent and control storm water runoff from new development, redevelopment, and construction activities. The minimum performance measures include mandatory LID techniques for development projects that meet certain thresholds and "shall be included in ordinances or other enforceable documents adopted by the local government." *Id.* at 26.

Condition S5(C)(5)(a)(iii) (Condition) provides that permittees must adopt and make effective a storm water management program that meets the 2013 Phase I Permit's requirements by June 30, 2015. *Id.* at 27. The second sentence of that Condition is at issue in this case and provides: "The local program . . . shall apply to all applications submitted after July 1, 2015 and *shall apply to projects approved*

*prior [to] July 1, 2015, which have not started construction by June 30, 2020.*" *Id.* (emphasis added).[1]

*Appeal of the 2013 Phase I Municipal Storm Water Permit*

Pierce County, Snohomish County, King County, and the Building Industry Association (BIA) of Clark County separately appealed portions of the 2013 Phase I Permit to the Board (Phase I appeal). The cities of Seattle and Tacoma and the Washington State Department of Transportation (WSDOT) intervened as appellants. Puget Soundkeeper Alliance, Washington Environmental Council, and Rosemere Neighborhood Association (collectively Alliance) intervened as respondents. The WSDOT withdrew from the Phase I appeal, and other parties separately appealed the 2013 Phase II Permit (Phase II appeal), which is not at issue in this case. The Board consolidated the appeals in November 2012, and subsequently consolidated certain issues from the Phase I and Phase II appeals in January 2013. Various parties moved for summary judgment on the Phase I and Phase II appeals issues. The Board issued three orders on summary judgment, but only its October 2, 2013 order is at issue in this case. Clerk's Papers (CP) at 23, 258, 424.

---

[1] This is the original language of the Condition. In its October 2, 2013 order on summary judgment, however, the Board directed Ecology to replace the phrase "projects approved" with "application[s] submitted" because otherwise the Condition failed to address the situation where an application was submitted before, but approved after, July 1, 2015. CR at 4011-12.

In its order, the Board concluded that storm water regulations required under the 2013 Phase I Permit are not "land use control ordinances" governed by Washington's vesting statutes. CR at 3998. It offered four reasons for this conclusion. First, the 2013 Phase I Permit implements state and federal laws to address water quality, not to control land use. *Id.* at 3998-99. Second, it is the province of the legislature to define what constitutes a "land use control ordinance," and the legislature has never defined environmental regulations administered by Ecology as such. *Id.* at 4002. Third, the legislature acknowledged the use of mandatory LID techniques in the 2013 Permits when it amended RCW 90.48.260 and directed Ecology to implement the use of LID techniques in the 2013 Phase II Permit. *Id.* at 4003. Lastly, municipalities must comply with state water quality laws and public policy counsels against allowing development projects to operate out of compliance with such laws. *Id.* at 3999, 4005.

The Board held a trial on the remaining issues and entered its final decision in March 2014. Snohomish County, King County, and BIA of Clark County separately appealed the Board's order on summary judgment to Thurston County Superior Court. Each filed an application for direct review and request for a certificate of appealability with the Board. The Thurston County Superior Court consolidated the appeals, and the Board issued a certificate of appealability. Snohomish County, King County, and BIA of Clark County then jointly sought direct review by Division Two of the Court of

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Appeals. That court accepted direct review of the Board's order on summary judgment. Ruling Accepting Direct Review, *Snohomish County v. Pollution Control Hr'gs Bd.*, No. 46378-4-II, at 3 (Wash. Ct. App. Sept. 5, 2014).

### *The Court of Appeals Opinion*

In a divided opinion, the Court of Appeals reversed the Board's order. *Snohomish County*, 192 Wn. App. at 323. The majority held that storm water regulations are "'land use control ordinances'" because they "restrain[]" or "direct[]" the use of land. *Id.* at 332-33. In determining what constitutes a "land use control ordinance," the majority relied on *New Castle Investments v. City of LaCenter*, 98 Wn. App. 224, 989 P.2d 569 (1999), *Westside Business Park, LLC v. Pierce County*, 100 Wn. App. 599, 5 P.3d 713 (2000), and *Phillips v. King County*, 136 Wn.2d 946, 968 P.2d 871 (1998). *Snohomish County*, 192 Wn. App. at 331-32. From these cases, the majority derived the rule that a state-mandated environmental regulation is a "land use control ordinance[]" so long as it exerts a restraining or directing influence over land use. *Id.* at 336, 338. The majority then rejected all six of Ecology's arguments regarding the vested rights doctrine, as well as its argument regarding federal preemption. On the latter issue, the majority held that the federal CWA does not preempt the vesting statutes because Congress provided states flexibility in adopting storm water regulations. *Id.* at 343. That Congress used the

word "practicable" in the federal MEP standard, did not mandate Ecology's timeline for reducing the discharge of pollutants to the MEP, and delegated the NPDES program to approved state agencies suggested that it intended "implementation of CWA objectives [to] occur within the framework of state law." *Id.* at 343-44. Reading the vesting statutes as part of this framework, the majority held that the CWA and the vesting statutes exist in harmony. *Id.* at 345.

Judge Thomas Bjorgen dissented, concluding that the CWA preempts the vested rights doctrine, and that the vesting statutes and the state WPCA stand in conflict. *Id.* at 345, 350. As to the first point, the dissent noted that no party had appealed the Board's conclusion that LID techniques constitute the reduction of pollutants to the MEP, as required by the CWA. *Id.* at 348-49. Applying the vested rights doctrine would thus frustrate the purposes of the CWA by allowing developers to evade compliance with the federal MEP standard. *Id.* at 349. As to the second point, the dissent argued that the vesting statutes must yield to the WPCA because the vesting statutes are general rules, while the WPCA is aimed at protecting a specific resource (state waters) from a specific threat (pollution). *Id.* at 352.

Ecology and Alliance filed separate petitions for review by this court, both of which we granted. *Snohomish County v. Pollution Control Hr'gs Bd.*, 185 Wn.2d 1026, 377 P.3d 712 (2016).

ANALYSIS

This court reviews the Board's orders under the Washington Administrative Procedure Act, chapter 34.05 RCW. *See* RCW 34.05.570(1)(b), .518(1); *Cornelius v. Dep't of Ecology*, 182 Wn.2d 574, 584-85, 344 P.3d 199 (2015). Review is confined to the record before the Board. RCW 34.05.558; *Port of Seattle v. Pollution Control Hr'gs Bd.*, 151 Wn.2d 568, 587, 90 P.3d 659 (2004). "The burden of demonstrating the invalidity of agency action is on the party asserting invalidity." RCW 34.05.570(1)(a).

This court will grant relief "where the agency has erroneously interpreted or applied the law, the agency's order is not supported by substantial evidence, or the agency's decision is arbitrary and capricious." *Postema v. Pollution Control Hr'gs Bd.*, 142 Wn.2d 68, 77, 11 P.3d 726 (2000) (citing RCW 34.05.570(3)). We review questions of law and an agency's application of the law de novo, but we accord an agency's interpretation of the law great weight where the statute is ambiguous and is within the agency's special expertise. *Cornelius*, 182 Wn.2d at 585; *Port of Seattle*, 151 Wn.2d at 587. Here, the Board's rulings were made on summary judgment, which we also review de novo. *Cornelius*, 182 Wn.2d at 585.

The Board issued a summary judgment order ruling that the storm water regulations mandated under the 2013 Phase I Permit are environmental regulations,

-10-

rather than "land use control ordinances," and are thus not subject to the vesting statutes. CR at 3998-99. This case therefore asks us to determine whether our vested rights doctrine precludes implementation of the 2013 Phase I Permit's storm water management program.

*Washington's Vested Rights Doctrine*

Washington's vested rights doctrine employs a "'date certain'" standard for vesting. *Town of Woodway v. Snohomish County*, 180 Wn.2d 165, 172, 322 P.3d 1219 (2014). That standard "entitles developers to have a land development proposal processed under the regulations in effect at the time a complete building permit application is filed, regardless of subsequent changes in zoning or other land use regulations." *Abbey Rd. Grp., LLC v. City of Bonney Lake*, 167 Wn.2d 242, 250, 218 P.3d 180 (2009) (plurality opinion). "Washington's rule is the minority rule," and it offers greater protection to developers than the rule applied in other states. *Id.*

Washington's vested rights doctrine originated at common law, but "is now statutory."[2] *Town of Woodway*, 180 Wn.2d at 173. The legislature codified the doctrine with regard to building permits and subdivision applications in 1987 and

---

[2] Amicus BIA of Washington asks this court to affirm "the constitutional foundation of the vested rights doctrine" and clarify that "the nature of the [doctrine] has not become purely statutory." Br. of Amicus Curiae BIA of Wash. at 4. Given that the parties to this case rely solely on the vesting statutes, we confine our review to determining the scope of the statutes and do not address this broader issue.

development agreements in 1995. RCW 19.27.095 (building permits); RCW

58.17.033 (subdivision applications); RCW 36.70B.180 (development agreements).

RCW 19.27.095(1) reads:

> A valid and fully complete building permit application for a structure, that is permitted under the zoning or other land use control ordinances in effect on the date of the application shall be considered under the building permit ordinance in effect at the time of the application, and the zoning or other land use control ordinances in effect on the date of application.

RCW 58.17.033(1) is substantially the same, but provides:

> A proposed division of land . . . shall be considered under the subdivision or short subdivision ordinance, and zoning or other land use control ordinances, in effect on the land at the time a fully completed application for preliminary plat approval of the subdivision, or short plat approval of the short subdivision, has been submitted to the appropriate county, city, or town official.

What constitutes a "land use control ordinance" under RCW 19.27.095 and

RCW 58.17.033 is the main inquiry in this case. Although RCW 36.70B.180 is also

a vesting statute, the parties do not heavily rely on it because it does not utilize the

same language as RCW 19.27.095 and RCW 58.17.033.[3] We thus limit our

discussion to RCW 19.27.095 and RCW 58.17.033.

---

[3] RCW 36.70B.180 provides in relevant part:
A development agreement and the development standards in the agreement govern during the term of the agreement, or for all or that part of the build-out period specified in the agreement, and may not be subject to an amendment to a zoning ordinance or development standard or regulation or a new zoning ordinance or development standard or regulation adopted after the effective date of the agreement.

*The Parties' Contentions*

Ecology and Alliance both argue that the vested rights doctrine does not apply to the development applications in this case, but for slightly different reasons. Both argue that the storm water regulations are focused on environmental outcomes, not particular land uses. Suppl. Br. of Pet'r Ecology at 11; Pet'rs Puget Soundkeeper All., Wash. Envtl. Council & Rosemere Neigh. Ass'n's Suppl. Br. at 10 (hereinafter Suppl. Br. of Pet'rs All.). Both note that while the vested rights doctrine favors development interests, it is limited in scope. Ecology's Pet. for Review at 1-2; Puget Soundkeeper All., Wash. Envtl. Council & Rosemere Neigh. Ass'n's Pet. for Discr. Review at 10 (hereinafter All.'s Pet. for Review). The vesting statutes apply only to "'land use control ordinances.'"[4] Ecology's Pet. for Review at 14 (quoting RCW 19.27.095(1); RCW 58.17.033(1)). To determine whether a regulation is a "land use control ordinance," Alliance suggests looking to the regulation's purpose. Suppl. Br. of Pet'rs All. at 10. Alliance concludes that storm water regulations adopted to comply with the NPDES permitting program are not "'land use control ordinances'" because they do "'not dictate particular uses of land but require[] only that, however the land is used, damage to the environment is kept within prescribed limits.'" All.'s

---

[4] As discussed above, the vesting statutes also apply to "development standard[s] or regulation[s]." RCW 36.70B.180. Because the parties did not analyze this statute in their briefs, we refer only to "land use control ordinances" as used in RCW 19.27.095 and RCW 58.17.033.

Pet. for Review at 12 (quoting *Rosemere Neigh. Ass'n v. Wash. State Dep't of Ecology*, No. 10-013, 2010 WL 3420570, at *8 (Wash. Pollution Control Hr'gs Bd. Aug. 26, 2010)).

Ecology's argument is similar, but it focuses more on legislative intent. Ecology contends that "the vesting statutes are intended to limit the exercise of municipal discretion." Ecology's Answer to Amici Curiae Brs. of Master Builders Ass'n of King & Snohomish Counties, Pac. Legal Found., Wash. Realtors & BIA of Wash. at 6 (hereinafter Ecology's Answer to Amici Curiae Brs.). Because this case involves state, rather than municipal, action, Ecology argues that the vesting statutes do not apply. *Id.* at 8. To support this argument, Ecology emphasizes that the legislature gave Ecology "'[c]omplete authority to establish' timing requirements" for the NPDES permits. Ecology's Pet. for Review at 16 (alteration in original) (quoting RCW 90.48.260(1)(a)). This case is thus unique because "[t]he [S]tate has created the framework the local programs must comply with, and Ecology must review and approve the local programs." Ecology's Answer to Amici Curiae Brs. at 8. Accordingly, developers do not have "a vested right to discharge polluted stormwater in violation of state and federal water pollution laws." *Id.* at 1.

Ecology also contends that the legislature tacitly approved Ecology's methods in the 2013 Phase I Permit when it amended RCW 90.48.260. Ecology's Pet. for

Review at 15. In RCW 90.48.260(3)(b)(i), the legislature directed Ecology to implement the use of LID techniques in the 2013 Phase II Permit. Ecology posits that although this provision concerns the 2013 Phase II Permit, it is relevant because the legislature could have directed Ecology to implement the storm water regulations according to the vesting statutes, but it chose not to. *Id.*

Snohomish County, King County, and BIA of Clark County each filed supplemental briefs in this court. Master Builders Association of King and Snohomish Counties, Pacific Legal Foundation, BIA of Washington, and Washington Realtors each filed amicus briefs in this court. While some nuances exist, these entities essentially make the same argument: the 2013 Phase I Permit directs permittees to act in a manner contrary to state law, as it mandates permittees to retroactively apply storm water regulations to development projects for which a completed application has been submitted. Suppl. Br. of Resp't Snohomish County at 1; Suppl. Br. of Resp't King County at 4-5; BIA of Clark County's Suppl. Br. at 4-5. These entities contend that Washington courts have set forth the proper test for determining what constitutes a "land use control ordinance." Suppl. Br. of Resp't Snohomish County at 5; Suppl. Br. of Resp't King County at 7-8; BIA of Clark County's Suppl. Br. at 5. That test determines whether a regulation exerts a "'restraining or directing influence of land use'" and affects "'the physical aspects

of development.'" Suppl. Br. of Resp't Snohomish County at 5 (quoting *Westside*, 100 Wn. App. at 607; *New Castle*, 98 Wn. App. at 237; Suppl. Br. of Resp't King County at 7-8; BIA of Clark County's Suppl. Br. at 5.

These entities dispute Alliance's argument that the underlying purpose of the regulation is controlling. Suppl. Br. of Resp't Snohomish County at 4; Suppl. Br. of Resp't King County at 6; BIA of Clark County's Suppl. Br. at 4. Rather, the relevant consideration is the practical effect the regulation has on a developer's permit application. Suppl. Br. of Resp't Snohomish County at 4; Suppl. Br. of Resp't King County at 6; BIA of Clark County's Suppl. Br. at 4. Accordingly, environmental regulations are not exempt from the definition of "land use control ordinance." Suppl. Br. of Resp't Snohomish County at 5 n.5; Suppl. Br. of Resp't King County at 7-8; BIA of Clark County's Suppl. Br. at 5. Despite their environmental justification, the storm water regulations are "land use control ordinances" because complying with them will compel developers to modify their site plans. Suppl. Br. of Resp't Snohomish County at 5; Suppl. Br. of Resp't King County at 9; BIA of Clark County's Suppl. Br. at 4.

The legislative history and purpose of the vesting statutes, as well as our precedent, favor Ecology's argument and the Board's ruling. Those sources indicate that the vested rights doctrine grew out of a concern that municipalities were abusing

their discretion with respect to land use and zoning rules. That concern is not present in the 2013 Phase I Permit, as the State has *mandated* local governments to implement a storm water management program that may take the form of storm water regulations. Accordingly, we reverse the Court of Appeals and reinstate the Board's order finding that the storm water regulations permittees must implement as part of the larger NPDES permitting program are not "land use control ordinances" under the vesting statutes.

### *Textual Analysis of the Vested Rights Statutes*

Both RCW 19.27.095 and RCW 58.17.033 contain three relevant sections. The first section, quoted above, states that a "valid and fully complete" application vests to the "zoning or other land use control ordinances" in effect on the date of application. RCW 19.27.095(1); RCW 58.17.033(1). The second section indicates that "[t]he requirements for a fully completed application shall be defined by local ordinance." RCW 19.27.095(2); RCW 58.17.033(2). The last section states that "[t]he limitations imposed by th[ese] section[s] shall not restrict conditions imposed under chapter 43.21C RCW [State Environmental Policy Act (SEPA)]." RCW 19.27.095(6); RCW 58.17.033(3). The structure of the vesting statutes suggests that a developer's rights vest with respect to the requirements for a complete application.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*See also Noble Manor Co. v. Pierce County*, 133 Wn.2d 269, 284, 943 P.2d 1378 (1997) (concluding that "what is vested is what is sought in the application").

The legislature has never defined the term at issue in this case: "land use control ordinance." Without a clear meaning of this term, the vesting statutes are ambiguous, and we look to legislative history and interpretive case law to discern legislative intent. *Jametsky v. Olsen*, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014). Our rule favoring an agency's interpretation of its own regulations, as well as the legislature's actions regarding implementation of LID techniques, also guide us. *See Postema*, 142 Wn.2d at 86; *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 789, 719 P.2d 531 (1986).

*Legislative History*

The legislative history of the vesting statutes is limited, but telling. The Final Bill Report on the bill enacting RCW 19.27.095 and RCW 58.17.033 states:

> Washington State has adhered to the current vested rights doctrine since the Supreme Court case of *State ex rel. [City of] Ogden v. Bellevue*, 45 Wn.2d 492[, 275 P.2d 899] (1954). The doctrine provides that a party filing a timely and sufficiently complete building permit application obtains a vested right to have that application processed according to zoning, land use and building ordinances in effect at the time of the application. The doctrine is applicable if the permit application is sufficiently complete, complies with existing zoning ordinances and building codes, and is filed during the period the zoning ordinances under which the developer seeks to develop are in effect. If a developer complies with these requirements, a project cannot be obstructed by enacting new zoning ordinances or building codes. *West Main Associates v. [City of] Bellevue*, 106 Wn.2d 47[, 720 P.2d 782] (1986).

FINAL B. REP. ON SUBSTITUTE S.B. 5519, 50th Leg., Reg. Sess. (Wash. 1987).

The references to *Ogden* and *West Main* suggest that in codifying the vested rights doctrine, the legislature was concerned with protecting developers' expectations under municipal zoning and land use ordinances. In *Ogden*, a developer brought a mandamus action to compel the city to issue a building permit after the city "exercised [its] discretion" to deny the application "notwithstanding [the application] met the requirements of [the city] ordinance." 45 Wn.2d at 494. This court reasoned that the developer's rights vested when she submitted a complete building permit application, and that "[t]he acts of administering a zoning ordinance do not go back to the questions of policy and discretion which were settled at the time of the adoption of the ordinance." *Id.* at 495. The legislature's reliance on this case is important for two reasons. First, *Ogden* involved an action in mandamus, which "compels performance of a duty." *In re Pers. Restraint of Dyer*, 143 Wn.2d 384, 398, 20 P.3d 907 (2001). Second, it referenced administrative acts by local authorities according to the terms of local ordinances. *Ogden* suggests that once a developer's rights vest, local ordinances must apply to all developers alike. Our more recent precedent supports this proposition, noting that the vested rights doctrine is "rooted in notions of fundamental fairness." *Abbey Rd. Grp.*, 167 Wn.2d at 250. The legislature's reliance on *Ogden* thus suggests

-19-

that the legislature understood the vested rights doctrine as curbing local discretion where none was warranted.

Similarly, the legislature's reference to *West Main* indicates that the vesting statutes pertain to local discretion involving zoning and land use ordinances. In *West Main*, this court held that a city ordinance improperly interfered with the vesting doctrine because the city went beyond merely establishing guidelines, instead denying developers the ability to vest rights until after a series of permits was obtained. 106 Wn.2d at 52. Notably, the city inappropriately reserved for itself "the almost unfettered ability to change its ordinances." *Id.* at 53. This concern regarding local discretion can also be found in *Erickson & Associates, Inc. v. McLerran*, where we stated "the [vested rights] doctrine places limits on *municipal* discretion." 123 Wn.2d 864, 873, 872 P.2d 1090 (1994) (emphasis added).

A key way the vesting statutes protect developers' interests against abuses of local discretion is by requiring that all the conditions for a complete application be set out by local ordinance. *See* RCW 19.27.095(2); RCW 58.17.033(2). Notably, the originally proposed vesting statutes did not allow SEPA requirements to be reiterated in a local ordinance, underscoring that these requirements are not part of the local requirements for submitting a complete application.[5] The separate

---

[5] The Senate Bill Report on the bill enacting RCW 19.27.095 and RCW 58.17.033 states that "[t]he sections preventing local governments from including SEPA conditions

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

identification of SEPA conditions underscores that the legislature understood them to be distinct from the sort of local zoning and land use rules required to be set forth by ordinance, but ultimately did not want to prohibit counties from including them in the interest of providing notice to permit applicants. There is no suggestion that the mandates of federal and state environmental laws are "local" in the sense that municipalities have the discretion to decide whether applicants must comply. The only local discretion is to include these mandates in a local ordinance.

The express carve out of "conditions imposed under chapter 43.21C RCW" further indicates that the legislature did not intend vesting to preclude enforcement of federal and state environmental laws. RCW 19.27.095(6); RCW 58.17.033(3); *see also* FINAL B. REP. ON SUBSTITUTE S.B. 5519 (noting inclusion of this provision). There are two possible ways to view this limitation on vesting. On the one hand, it could suggest the legislature intended not to allow vesting to restrict an array of state-directed environmental regulations. On the other hand, it could suggest that only SEPA-mandated regulations are exempted. We believe the former interpretation is accurate when the carve out provision is considered in context. At the time the vesting statutes were enacted, SEPA was the statutory scheme containing relevant environmental regulations; the NPDES permitting program did not yet exist.

---

in ordinances that define the requirements for a fully completed application are stricken."
S.B. REP. ON SUBSTITUTE S.B. 5519, 50th Leg., Reg. Sess. (Wash. 1987).

Ecology issued the first NPDES permits in 1995, while the legislature codified the vesting statutes in 1987. CR at 4057; RCW 19.27.095; RCW 58.17.033. In any event, SEPA enumerates "[w]ater/stormwater" as one of its categories, which suggests that state actions pertaining to storm water were intended to be exempt from the vesting statutes. WAC 197-11-444(2)(d)(vii).[6]

*Development of the Vested Rights Doctrine in Case Law*

Case law discussing the vesting statutes supports the statutory interpretation discussed above. The parties primarily rely on *New Castle, Westside*, and *Phillips*.

In *New Castle*, the court held that a city ordinance imposing a transportation impact fee was not a "land use control ordinance" under the vesting statutes because the ordinance "merely affect[ed] the ultimate cost of the development." 98 Wn. App. at 232. The court suggested that a "land use control ordinance" was an ordinance that exerts a "restraining or directing influence" over land use. *Id.* at 229. Had the fee "affect[ed] the physical aspects of development (i.e., building height, setbacks, or sidewalk widths) or the type of uses allowed (i.e., residential, commercial, or industrial)," it would have been "subject to the vested rights doctrine." *Id.* at 237.

---

[6] We do not entertain Ecology's argument that it could use SEPA directly to enforce the requirements at issue here. Ecology did not raise this argument below, and the Court of Appeals refused to address it. We acknowledge the connection between SEPA and the permit-based storm water regulations only because it informs our interpretation of the scope of the exemption in the vesting statutes.

The court in *Westside* adopted the definition of "land use control ordinance" from *New Castle*. 100 Wn. App. at 607. There, the court held that the developer's "'bare bones'" application vested to the county's storm water drainage ordinances in effect when the developer submitted the application. *Id.* at 602, 609. Because the storm water drainage ordinances were a "mandatory prerequisite" to permit approval, the court concluded that the ordinances were "land use control ordinances." *Id.* at 607. In so holding, the court also relied on this court's decision in *Phillips*. *Id.*

In *Phillips*, this court rejected landowners' inverse condemnation claim against the county for property damage resulting from the county's approval of a developer's permit under regulations existing at the time of the developer's application. 136 Wn.2d at 969. This court stated:

> Our conclusion on this issue comports with the practical realities of the vested rights doctrine. . . . Under current law, as required by the subdivision statute, RCW 58.17.033, a subdivision application is reviewed under the codes, ordinances and regulations in effect at the time a complete application for preliminary approval is filed. Since the application for the Autumn Wind project was submitted in 1988, the plans for the development were reviewed pursuant to the 1979 Surface Water Design Manual. As noted above, a new surface water drainage code was adopted by King County in 1990, but it did not apply to the Autumn Wind project because the project was vested to the prior code under RCW 58.17.033.

*Id.* at 963 (citations omitted). Given this language, the court in *Westside* concluded that "even if dicta, because the *Phillips* court plainly considered whether surface water drainage ordinances are within the ambit of the vested rights doctrine . . . we are not

-23-

prepared to say that storm water drainage ordinances are not subject to the vesting rule." 100 Wn. App. at 607-08.

These cases do not stand for the proposition that the vesting statutes trump application of all storm water regulations. As Ecology correctly notes, the present case is distinguishable because the storm water regulations in the 2013 Phase I Permit are the result of state, not local, action. In *New Castle*, *Westside*, and *Phillips*, the ordinances at issue had been adopted by a city or county as a matter of local regulation. *See also Lauer v. Pierce County*, 173 Wn.2d 242, 248, 263, 267 P.3d 988 (2011) (building permit applicants' rights did not vest to the *county's* ordinance requiring riparian buffer because the applicants submitted knowing misrepresentations of fact); *Julian v. City of Vancouver*, 161 Wn. App. 614, 626-28, 255 P.3d 763 (2011) (landowners' rights vested when they submitted their preliminary short subdivision application, and thus a former version of the *city's* municipal code concerning riparian buffer areas applied). While the permittees in the present case include various cities and counties, the storm water regulations are not truly local because the State has directed local governments to implement the regulations in order to comply with the NPDES permitting program. The storm water regulations are mandatory state regulations, rather than discretionary local regulations. The vesting doctrine therefore does not excuse compliance with the requirements of the 2013 Phase I Permit.

Admittedly, *Westside* involved storm water drainage requirements the county adopted "in part as a response to the federal [CWA]." 100 Wn. App. at 601. The county, however, developed the requirements on its own rather than as a requirement imposed by the State through a municipal storm water permit. *Westside* is thus distinguishable from the present case.

We do not find *Phillips* particularly helpful, as the case did not turn on the vested rights doctrine. *See State v. Carneh*, 153 Wn.2d 274, 286 n.3, 103 P.3d 743 (2004) (noting that because the court in a prior case mentioned a statute only in passing and did not specifically analyze it, the case could not be relied on for its conclusions regarding the statute). Nor has this court described *Phillips* as involving the interpretation of the vested rights doctrine, save one instance. In *Lakey v. Puget Sound Energy, Inc.*, we stated that "[w]e did use the 'then existing' language, but only because [*Phillips*] involved the vested rights doctrine." 176 Wn.2d 909, 930, 296 P.3d 860 (2013) (citing *Phillips*, 136 Wn.2d at 961). This seems a passing remark, as *Lakey* involved an entirely different issue. *See Carneh*, 153 Wn.2d at 286 n.3. We do not rely on *Lakey* to guide our interpretation of the vesting statutes.

Though the parties do not discuss them at length, we believe it is important to distinguish three other cases involving the interaction between SEPA and the vesting statutes. In *Town of Woodway*, this court held that the "vested rights doctrine applies

to permit applications filed under [Growth Management Act (GMA), chapter 36.70A RCW,] plans and regulations . . . later found to be noncompliant with the [SEPA]." 180 Wn.2d at 169. In that case, we relied on the plain language of the GMA, which stated that "'[a] determination of invalidity is *prospective in effect* and . . . *does not apply to a completed development permit application.*'" *Id.* at 175 (quoting RCW 36.70A.302(2)). In contrast to the GMA, the 2013 Phase I Permit at issue does not contain similar language regarding the application of vesting and the exclusive remedies for SEPA violations.

In *Adams v. Thurston County*, the Court of Appeals stated that "[t]he County must base any condition or denial on SEPA policies adopted prior to the application or submittal date, because vesting applies to those policies as well." 70 Wn. App. 471, 481 n.11, 855 P.2d 284 (1993). For this proposition, *Adams* cited *Victoria Tower Partnership v. City of Seattle*, 49 Wn. App. 755, 761, 745 P.2d 1328 (1987) ("[T]he vested rights doctrine is equally appropriate for SEPA ordinances."). We conclude *Adams* and *Victoria Tower* are mistaken and must be disapproved for two reasons. First, as this court in *Phillips* noted, "[t]he vesting statute does not abrogate the requirements of SEPA." 136 Wn.2d at 963 n.5. Second, *Victoria Tower* was decided in 1987, the same year the legislature enacted the vesting statutes. Accordingly, "[e]ven if *Victoria Tower* can be read to expand the common law

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

vesting doctrine to [master use permit] applications, it has been superseded by RCW 19.27.095(1)." *Abbey Rd. Grp.*, 167 Wn.2d at 254.

*Deference to the Board and to Ecology*

We accord an agency's interpretation of the law great weight where the statute is ambiguous and is within the agency's special expertise. *Cornelius*, 182 Wn.2d at 585; *Port of Seattle*, 151 Wn.2d at 587. We also defer to an agency's interpretation of its own regulations. *Postema*, 142 Wn.2d at 86. Given that the legislature designated Ecology as the agency to regulate the State's water resources, RCW 43.21A.020, "Ecology's interpretation of relevant statutes . . . is entitled to great weight." *Port of Seattle*, 151 Wn.2d at 593. The Board's review of Ecology's actions is also entitled to deference. *See id.* at 592-93.

The Board has ruled that requirements imposed by NPDES storm water permits are not "land use control ordinances" subject to state vesting laws. CR at 3999; *Cox v. Dep't of Ecology*, No. 08-077, 2009 WL 542494, at *5, *4 (Wash. Pollution Control Hr'gs Bd. Feb. 26, 2009) (finding that a "Construction Storm water General Permit" (CSGP) was not a "land use control ordinance" because "local governments are not required to review and approve (*nor do they have any authority to do so*) the conditions or application of the CSGP prior to approval of the subdivision or plat" (emphasis added)). Similarly, the Board has rejected application

of *Westside*, noting that it "is not a water pollution control permit case; it involved a *local* government's storm drainage ordinance." *Rosemere Neigh. Ass'n v. Dep't of Ecology*, No. 10-013, 2010 WL 3420570, at *7 (Wash. Pollution Control Hr'gs Bd. Aug. 26, 2010) (emphasis added). In rejecting reliance on *Westside*, the Board has noted "the better analysis for purposes of the vesting issue entails an examination of the *source of authority* for the requirement as well as its purpose." *Id.* at *8 (emphasis added). The Board's analysis aligns with our holding in the present case.

### *Legislative Action Surrounding the 2013 Permits*

The legislature's actions with regard to implementation of Ecology's LID requirements also support our holding. "We presume the legislature is 'familiar with judicial interpretations of statutes.'" *State v. Ervin*, 169 Wn.2d 815, 825, 239 P.3d 354 (2010) (quoting *State v. Bobic*, 140 Wn.2d 250, 264, 996 P.2d 610 (2000)). We also presume amendments are consistent with previous judicial decisions, and we may conclude inaction indicates legislative approval of them. *Id.*; *Hangman*, 105 Wn.2d at 789.

The legislature directly addressed the inclusion of LID requirements in the 2013 Permits in three separate instances. First, the legislature amended RCW 90.48.260 to direct Ecology to implement the use of LID techniques in the 2013 Phase II Permit. RCW 90.48.260(3)(b)(i). Second, the Final Bill Report on the bill

enacting the amendment to RCW 90.48.260 states that "[t]imeframes for the effect of certain requirements within the updated permit are specified, including for [LID] requirements." FINAL B. REP. ON SECOND ENGROSSED SUBSTITUTE S.B. 6406, at 4, 62d Leg., 1st Spec. Sess. (Wash. 2012). Third, in 2012 and 2013, the legislature appropriated funds for Ecology to provide LID training to 2013 Phase II Permittees. THIRD ENGROSSED SUBSTITUTE S.B. 5034, § 302(3), at 118-19, 63d Leg., 2d Spec. Sess. (Wash. 2013); THIRD ENGROSSED SUBSTITUTE H.B. 2127, 62d Leg., 2d Spec. Sess. (Wash. 2012). It is thus apparent that the 2013 Phase I Permit's requirements, including the Condition at issue in this case, were known to the legislature. The legislature's amendment to RCW 90.48.260 is consistent with the Board's interpretation of the 2013 Phase I Permit, and it appears the legislature has approved of this interpretation. *See Ervin*, 169 Wn.2d at 825; *Hangman*, 105 Wn.2d at 789.

*Doctrine of Finality of Land Use Decisions*

Snohomish County urges us to consider the doctrine of finality, describing this as an alternative issue the Court of Appeals did not reach. Suppl. Br. of Resp't Snohomish County at 13; Snohomish County's Answer to Ecology's & All.'s Pets. for Review (hereinafter Snohomish County's Answer to Pets. for Review) at 16. Snohomish County argues that building and development permits are "irrefutably valid" if not challenged under the Land Use Petition Act (LUPA), chapter 36.70C

RCW, within 21 days of being issued. Snohomish County's Answer to Pets. for Review at 16-17. Alliance responds that permittees "should have conditioned [development] permits issued after [August 1, 2012] to ensure that applicants were on notice of the timing restriction." Puget Soundkeeper All., Wash. Envtl. Council & Rosemere Neigh. Ass'n's Reply in Support of Pet. for Discr. Review (hereinafter All.'s Reply in Support of Pet. for Review) at 3; *see also* Dep't of Ecology's Reply to Snohomish County's Answer to Pet. for Review (hereinafter Ecology's Reply in Support of Pet. for Review) at 2-3. That way, permittees would not have to amend or withdraw a development permit that was already issued. All.'s Reply in Support of Pet. for Review at 3; Ecology's Reply in Support of Pet. for Review at 2. We conclude that the Condition does not violate the doctrine of finality of land use decisions given the Board's findings and the statutory language of LUPA.

The Board has "consistently rejected arguments that state law doctrines of vested rights and *finality of land use decisions* control and limit the application of water quality requirements developed under both state and federal law." CR at 4000 (emphasis added). In its summary judgment order, the Board concluded that the 2013 Phase I Permit does not violate the doctrine of finality of land use decisions. *Id.* at 4007. It correctly noted that the vested rights doctrine and the doctrine of finality of land use decisions are "closely related," and that a developer does "not

have a legitimate expectation that pollution control measures will be frozen in time to outdated or ineffective measures." *Id.*

LUPA's purpose is "timely judicial review." RCW 36.70C.010. It provides a 21-day deadline to appeal land use decisions of local jurisdictions. *Habitat Watch v. Skagit County*, 155 Wn.2d 397, 406, 120 P.3d 56 (2005). Snohomish County's argument is misplaced because no party is challenging any land use decision. Rather, the parties are challenging the application of storm water regulations to development permits.

Having rejected Snohomish County's vested rights argument, we find its finality argument unavailing. Indeed, it is not even clear that Snohomish County is offering a separate argument, as its briefing "circle[s] back to its vesting argument." Ecology's Reply in Support of Pet. for Review at 3; Resp't Ecology's Response Br. at 30.[7] And at oral argument, counsel for the County did not seem to distinguish between the vesting statutes and the doctrine of finality of land use decisions. Wash. Supreme Court oral argument, *Snohomish County v. Pollution Control Hearings Bd.*, No. 92805-3 (Oct. 13, 2016), at 21 min., 17 sec., *audio recording by* TVW,

---

[7] At the Court of Appeals, Snohomish County stated simply, "It is no more lawful for the County to truncate vested property rights by imposing a permit condition on a project approval than it is for the County to truncate vested property rights by enacting new development regulations and applying them to vested applications." Snohomish County's Opening Br. at 37.

Washington State's Public Affairs Network, http://www.tvw.org (simultaneously mentioning application of new storm water regulations to "pending permit applications," which refers to the vesting statutes, and "projects that already have permits issued," which refers to the doctrine of finality). As noted above, the Board found that the vested rights doctrine and the doctrine of finality of land use decisions are "closely related." CR at 4007. We agree and adopt the Board's findings on this issue. *See Port of Seattle*, 151 Wn.2d at 592-93.[8]

CONCLUSION

We reverse the Court of Appeals and reinstate the Board's order. The legislative history and our precedent demonstrate that the vesting statutes were intended to restrict municipal discretion with respect to local zoning and land use ordinances. Because state and federal law direct the permittees to implement the storm water regulations at issue in this case, the regulations are not the sort of local municipal land use and zoning ordinances the legislature was concerned with. Indeed, the legislature's actions with regard to implementation of Ecology's LID techniques make it clear that the vesting statutes do not preclude compliance with the 2013 Phase I Permit.

---

[8] The parties also ask us to consider the use of police powers and federal preemption. Suppl. Br. of Pet'r Ecology at 15, 17; Suppl. Br. of Pet'rs All. at 16. We do not address these arguments in light of our resolution of this case.

*Snohomish County, et al. v. Pollution Control Hearings Bd., et al.*, 92805-3

Stephens, J.

WE CONCUR:

Madsen, C.J.

Wiggins, J.

Johnson, J.

González, J.

Owens, J.

Gordon McCloud, J.

Fairhurst, J.

Yu, J.